### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 21-cr-433 (BAH)** |
| | **:** | |
| **GARY JAMES HARMON,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S MEMORANDUM
### IN SUPPORT OF PRETRIAL DETENTION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in Support of Pretrial Detention pursuant to 18 U.S.C. § 3142(f)(2)(A) and (B).   In support whereof, the government states as follows:

### FACTUAL BACKGROUND

This case arises out of the prosecution of the defendant's brother, Larry Dean Harmon, for operating the illicit Darknet bitcoin money laundering and money transmitting service called Helix.   *See United States v. Larry Dean Harmon*, No. 19-cr-395 (BAH).   As alleged in the Indictment in this case, Helix enabled customers, for a fee, to send bitcoins to designated recipients in a manner which was designed to conceal and obfuscate the source or owner of the bitcoins. This type of service is commonly referred to as a bitcoin "mixer" or "tumbler."   Prior to Larry Harmon's arrest, federal investigators using blockchain analysis identified 16 Bitcoin wallets (the "SUBJECT WALLETS") containing approximately 4,877 BTC traced to Helix.   This sum represented criminal proceeds that Larry Harmon accumulated through his operation of Helix.   At the time of Larry Harmon's arrest, federal agents acting pursuant to a search warrant seized a cryptocurrency storage device belonging to Larry Harmon that was later discovered to contain the SUBJECT WALLETS.   The defendant, Gary James Harmon, has been indicted for remotely

accessing and absconding with approximately 712.6 BTC from the SUBJECT WALLETS, representing property that was seized pursuant to a lawful warrant and subject to criminal forfeiture in the pending proceeding against Larry Harmon.

**A. Indictment and Arrest of Larry Harmon and Recovery of TREZOR ONE Cryptocurrency Storage Device**

On December 3, 2019, a federal grand jury in the District of Columbia returned a sealed indictment against Larry Harmon on counts of Conspiracy To Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a); and Money Transmission Without a License, in violation of D.C. Code § 26-1023(c).   The Indictment contained a Forfeiture Allegation, which provided notice that the government will seek the forfeiture of "any property, real or personal, involved in the offense, and any property traceable thereto," referring to Counts One and Two of the Indictment, charging Conspiracy To Launder Monetary Instruments and Operating an Unlicensed Money Transmitting Business.

On February 6, 2020, federal agents arrested Larry Harmon in Akron, Ohio and executed search warrants issued in the Northern District of Ohio at three properties owned or leased by Larry Harmon, including suites on the second and third floors of a three-story office building at 57/59 Market Street in Akron, Ohio.   Agents located Larry Harmon on the second floor of the Market Street building.   In the same location, agents recovered a Trezor-brand cryptocurrency storage device ("TREZOR ONE") that was magnetically attached underneath a table located a short distance from where Larry Harmon was seated at the time of his arrest.



**Figure 1: TREZOR ONE**

Federal agents executing the search warrants also discovered the defendant, Gary Harmon, was residing in an apartment directly across from the suite where Larry Harmon was found.    Gary Harmon told agents that he was Larry Harmon's brother and worked for Larry Harmon's company, Coin Ninja.    Gary Harmon told agents that he was not familiar with Helix.

Further on February 6, 2020, Belizean authorities, acting on a Mutual Legal Assistance Treaty request, searched a condominium leased by Larry Harmon in San Pedro, Belize.   On February 10, 2020, federal agents executed a search warrant issued in the Northern District of California for an apartment leased by Larry Harmon in California.   The searches in Ohio, California, and Belize recovered multiple cryptocurrency storage devices.

Cryptocurrency wallets stored on a Trezor device, such as TREZOR ONE, can be accessed in at least two ways.   First, if the user has physical access to the device, the user can plug the device into a computer and access it by entering a passcode on the device.   Second, if the user is unable to physically access the device, the user can recreate wallets stored on the device by using recovery seed words.   Recovery seed words are a unique sequence of 12 to 24 words securely

generated in the Trezor device when it is set up.   If a user is later unable to access the device, the user can still access the cryptocurrency wallets stored on the device by entering the seed words in the correct sequence into another Trezor device or similar application, which will recreate the data constituting the same cryptocurrency wallets stored on the original device.

TREZOR ONE had an additional security feature enabled, which allows a user to create unlimited "hidden wallets" within a Trezor device.   Each hidden wallet is protected by its own additional passphrase.   Without the correct passphrase, such hidden wallets are not visible on the device and cannot be accessed.

Immediately following Larry Harmon's arrest, law enforcement was unable to recover any cryptocurrency from TREZOR ONE.   TREZOR ONE actually held the 16 SUBJECT WALLETS containing proceeds and fees Larry Harmon generated through the operation of Helix, but the wallets were concealed within hidden wallets and were not visible to law enforcement.

Federal agents subsequently transported TREZOR ONE to a secure evidence locker in Washington, D.C.

### B.  Gary Harmon Attends Detention Hearings for Larry Harmon

On February 11, 2020, Larry Harmon appeared for a detention and identity hearing before Magistrate Judge Kathleen B. Burke in the U.S. District Court for the Northern District of Ohio. The defendant, Gary Harmon, was present in the gallery of the courtroom.   During the hearing, IRS-CI Special Agent Jeremiah Haynie testified that agents had recovered a spreadsheet from a search of Larry Harmon's Google Drive account, last edited October 18, 2018, purporting to show an accounting by Larry Harmon of bitcoin and other assets valued at $56,939,610.   2/11/20 Tr. at 35-39, attached as Ex. A (excerpts).   Some of the bitcoin was identified as being located on

4

"Trezor" devices.   *Id.* at 36.   Special Agent Haynie explained that bitcoin stored on a Trezor device can be recovered remotely by means of seed keys.   *Id.* at 37-38.   Special Agent Haynie further testified that, while executing the search warrant for the Market Street premises, he had found and seized a concealed Trezor device (*i.e.*, TREZOR ONE).   *Id.* at 39-40.   When asked by the government attorney, "Are there in fact tens of millions of dollars that have not yet been seized in this investigation," Special Agent Haynie confirmed, "Yes."   *Id.* at 73.   In argument, defense counsel informed the Court that Larry Harmon had the ability to "unlock those devices." *Id.* at 86.   Government counsel confirmed that the government was unable to access to Larry Harmon's cryptocurrency stored on devices such as TREZOR ONE.   *Id.* at 84 (noting "substantial resources that he potentially has at his fingertips that the government does not have access to now"); *see also id.* at 86 ("But certainly to the extent he wishes to provide the passwords and the PINs and the information that would allow us to access that bitcoin, we would happily accept that offer.").

On March 13, 2020, Larry Harmon appeared for a detention appeal hearing before this Court.   The defendant, Gary Harmon, was present in the gallery of the courtroom.   There was extensive argument during the detention hearing about Trezor devices, seed recovery phrases, and hidden wallets.   *See* 3/13/20 Tr. at 17-19, 22-23, attached as Ex. B (excerpts).   Counsel for the government stated: "These are illegal proceeds from Helix, and we have not been able to secure those assets.   Until we can secure them and transfer them to a government wallet, those are available for [Larry Harmon] or his family members to transfer them . . . ."   *Id.* at 19.   At the conclusion of the hearing, Larry Harmon was ordered released pending trial, subject to conditions of release including restrictions on cryptocurrency transactions.

**C. Gary Harmon Transfers Helix Proceeds from the Hidden Wallets Stored on TREZOR ONE**

IRS-CI monitored the 16 SUBJECT WALLETS containing approximately 4,877 BTC traceable to Helix for any indication funds were being moved.   Between February 6, 2020 and April 18, 2020, there was no such movement of funds.   However, beginning on or about April 19, 2020 and continuing through on or about April 24, 2020, IRS-CI observed a series of eight bitcoin transactions from the 16 SUBJECT WALLETS into new bitcoin wallets previously unknown to law enforcement.   In total, the transfers totaled approximately 712.6003 BTC, with an approximate value of $5,397,083.98 as of April 25, 2020 from the SUBJECT WALLETS into eight new wallets (the "NEW WALLETS").   The transactions are summarized in the following table:

| Transfer Timestamp | Originating Wallet | Destination Wallet | BTC Sent | Approximate U.S. dollar value as of 4/25/20 |
|---|---|---|---|---|
| 4/21/20 20:41 | **SUBJECT WALLET 1** 365Ha89bm4ujCxJyGax8yg GYpkH9FfcYTc | **NEW WALLET 1** bc1q8xljz94cckeusrsvj9hc23z4 8vprne5asyda9q | 109.1979479 | $827,042.33 |
| 4/21/20 16:26 | **SUBJECT WALLET 2** 34Yjw2Tb8fHM97LgB3enVc ajixH6U9Qpxi | **NEW WALLET 2** bc1qm2s3fawp9cykf7cml2an4 895nm8vurmf8cz4fe | 99.99989744 | $757,378.22 |
| 4/21/20 16:26 | **SUBJECT WALLET 3** 33CP1cYEjFTCVjRDYEw1wZ Pzer688BE4BT | **NEW WALLET 3** bc1quw0cj5sz7twgjr2k5hk3m 5jfvsy30xl0qts479 | 229.9998355 | $1,741,970.45 |
| 4/21/20 13:03 | **SUBJECT WALLET 4** 3F7cdqtZMdriwBwwCB74W iKit3bkirihRb | **NEW WALLET 4** bc1qt4asc4wj6khhsm3xs5us5 4jqvwlwxmd7f6wzax | 54.83112457 | $415,279.42 |
| 4/21/20 19:22 | **SUBJECT WALLET 5** 35fhvnAC37K55WuCTxFXk7 zfTJge75G1dD | **NEW WALLET 5** bc1q7apq75zv6r7hvcqrpm56 nke54le7uhf87ytsvh | 55.88845252 | $423,287.40 |
| 4/20/20 12:44 | **SUBJECT WALLET 6** 3HuevX13pPgnUrtqU3UaJx 1AMBph5xH86w | **NEW WALLET 6** bc1q485k94wyqttylekcge8hw uy2fa94mq5r7jk62y | 158.6830152 | $1,201,831.83 |
| 4/19/20 14:42 | **SUBJECT WALLET 7** 3PLUJ9YJ6p3RrhmvmMQV wyS38VxeRQ81Nq | **NEW WALLET 7** bc1q5lf2jwjfkajxtwtfxj0zqy3n 5jrm20w5gsp4k2 | 2.999981 | $22,721.23 |
| 4/24/20 19:26 | **SUBJECT WALLET 8** 37NxUHKKbmoZsQDEw5yyJ xktNLGdzjDV1J | **NEW WALLET 8** bc1qee72uxqgj5yrywfmtcmm yfkk4zku67ep6krfe3 | 0.99990861 | $7,573.10 |
| | | **TOTAL:** | **712.6003** | **$5,397,083.98** |

On April 26, 2020, government attorneys filed a motion for an emergency status hearing in Larry Harmon's criminal case, alerting the Court to the cryptocurrency transactions involving

the 16 SUBJECT WALLETS.    Notably, the transactions stopped after the government's filing—

suggesting that the responsible party was aware of developments in Larry Harmon's criminal case.

On April 28, 2020, following a hearing, this Court issued an Order requiring Larry Harmon

to provide the government with access to any and all cryptocurrency within Larry Harmon's

possession, including "by disclosing seed recovery keys, access to hidden wallets, and other keys

needed to transfer cryptocurrency."    *See* 19-cr-395, ECF No. 26.    The Court further required

that such cryptocurrency be turned over to the custody of the U.S. Marshals Service during the

pendency of the criminal proceeding.    On April 29, 2020, Larry Harmon complied with the

Court's order and, through his attorney, provided the government with recovery seed phrases and

passphrases for his cryptocurrency wallets.

Further on April 29, 2020, federal agents used the credentials provided by Larry Harmon

to access hidden wallets within TREZOR ONE.    Federal agents confirmed that TREZOR ONE

contained all 16 SUBJECT WALLETS.    Federal agents successfully recovered approximately

4,168.98163 BTC from wallets stored on TREZOR ONE, which BTC was then transferred to the

U.S. Marshals Service.    Federal agents were also able to view transaction history for TREZOR

ONE and confirm that eight of the SUBJECT WALLETS had been emptied out as a result of the

defendant's transactions.

**◻ TREZOR**

**Account #1 - BTC**

| Date | Time | TX id | Address | TX type | Value | TX total | Balance |
|------|------|-------|---------|---------|-------|----------|---------|
| null | null | d3e06fe7927837b6bba415e0e9a6a53ee18ad44a7c69f8312c5b07e5071e13fd | bc1qclgtrspsf5e4vcv3cpalhva5j3n3jqprxlzq99 | OUT | 3220.16887712 | -3220.16936432 | 0 |
| 2020-04-24 | 19:36:20 | 114294557cac4a021ed914f058 4b0113d37297e2559911eebbd a98c7ed8eb221 | bc1qee72uxqgj5yrywfmtcmmyfkk4zku67ep6krfe3 | OUT | 0.9998727 | -0.99990861 | 3220.169364 32 |
| 2020-04-21 | 16:26:46 | 6efe5c035e49611c107654ae89 c24d7082f87d685441a393854a 78d582491d9e | bc1qm2s3fawp9cykf7cml2an4895nm8vurmf8cz4fe | OUT | 99.99989744 | -99.9999084 8 | 3221.169272 93 |
| 2020-04-21 | 16:26:46 | 3ae808dd55dd74737bb018f52d 4b27a5c158e8fe5848b1d04d0e 46cd6c4898f9 | bc1quw0cj5sz7twgjr2k5hk3m5jfvsy30xl0qts479 | OUT | 229.9998355 1 | -229.999846 55 | 3321.169181 41 |



**Account #1 - BTC**

| Date | Time | TX id | Address | TX type | Value | TX total | Balance |
|------|------|-------|---------|---------|-------|----------|---------|
| 2020-04-21 | 19:22:00 | e654e7ee5031798975a655b3c9 8663 8d16b55e315da53df29405 92e0f87a32bc | bc1q7apq7Szv6r7hvcqrpm56nkeS4le7uhf87ytsvh | OUT | 55.88845252 | -55.8884635 6 | 0.000006 |
| 2020-04-21 | 13:03:10 | 9566e1be5b5dc846eeb1938b3e 3daee84dab589fb5725f105b11e 3d6f630eccf | bc1qt4asc4wj6khhsm3xs5us54jqvwlwxmd7f6wzax | OUT | 54.83112457 | -54.8311337 5 | 55.88846956 |
| 2020-04-20 | 12:44:47 | 35cda1e90a74fe87d8b817a07e 9c4689d3d1b0472 1bfd9d919ed 12d9a15336cc | bc1q485k94wyqttylekcge8hwuy2fa94mq5r7jk62y | OUT | 158.6830152 4 | -158.683022 69 | 110.7196033 1 |
| 2020-04-19 | 14:42:38 | 3bd837dcd9edd512c5412b2db4 580798e290c90198a3bfd049c5 ac6a6f784253 | bc1q5lf2jwjfkajxtwtfxj0zqy3n5jrm20w5gsp4k2 | OUT | 2.99998125 | -3 | 269.402626 |

**Figure 2: TREZOR ONE Transaction Histories**

According to non-content electronic records obtained by Court order pursuant to 18 U.S.C. § 2703(d), the defendant's personal Google account received four emails from the email address **no-reply@trezor.io** between April 19, 2020 and April 26, 2020, bracketing the time period during which the illicit bitcoin movements took place. This is consistent with Gary Harmon using Trezor's web interface to recreate a Trezor wallet using only seed words and a passphrase. Notably, the defendant did not receive any other messages from Trezor.io addresses before or after April 2020.

**D. The Defendant Falsely Denies Removing the Missing Bitcoin, Admits to Destroying Evidence**

On July 15, 2020, federal agents from FBI and IRS-CI conducted a voluntary interview of the defendant in Akron, Ohio. Agents advised the defendant that he was suspected of transferring approximately 712 BTC owned by Larry Harmon that were subject to forfeiture in the pending criminal case against Larry Harmon. The defendant denied moving the bitcoin, stating: "if I took it, why wouldn't I take it all?"

The defendant stated that he obtained a USB thumb drive from Larry Harmon containing passwords for accounts and servers used at the company Coin Ninja. The defendant stated that

he found several partial sets of seed words on the USB drive.   When agents asked about the whereabouts of the USB drive, the defendant stated that he flushed the USB drive down the toilet at his gym.

### E. The Defendant Launders the Bitcoin Through Online Mixers, Engages in Lavish Spending Spree

Prior to the illicit removal of the 712.6 BTC from TREZOR ONE, the defendant was on unemployment and lived a modest lifestyle.   Bank records show that the defendant was earning approximately $45,000 per year as a Coin Ninja employee prior to Larry Harmon's arrest in February 2020.   The defendant received his last paycheck of approximately $1,769.51 on or about January 31, 2020.   Beginning on or about April 13, 2020, the defendant began receiving unemployment payments from the Ohio Department of Jobs and Family Services (ODJFS). Between April 13, 2020 and November 18, 2020, the defendant received a total of $23,436 in unemployment compensation from ODJFS.   He also received economic stimulus payments from the U.S. Department of the Treasury totaling $2,400 in April 2020 and December 2020.   He had no other known legitimate income or employment during this time period.

Beginning on or about August 18, 2020, federal agents monitoring the public blockchain began observing numerous small transfers of bitcoin out of the eight NEW WALLETS and into two different bitcoin mixers, Wasabi Wallet and ChipMixer.com.[1]   Between on or about August

---

[1] WasabiWallet.io is an open-source, non-custodial privacy-focused bitcoin wallet that creates trustless CoinJoin transactions over the Tor network.   CoinJoin is a mechanism by which multiple participants combine their coins into one large transaction with multiple inputs and multiple outputs.   An observer cannot determine which output belongs to which input, and neither can the participants themselves.   This makes it difficult for outside parties to trace where a particular coin originated from and where it was sent to.

Chipmixer.com is a bitcoin tumbling service operating on both the Clearnet and the Tor network.   ChipMixer mixes funds of its user together (similar to how Helix functioned) and returns them to users in an effort to confuse blockchain analysts or blockchain tracking software.

18, 2020 through on or about March 30, 2021, at least 518.98 BTC was sent to these mixers from the NEW WALLETS.

Corresponding to these efforts to launder the 712.6 BTC through online mixer services, the defendant's financial situation began a dramatic transformation.   Bank records show that the defendant began making thousands of dollars in unexplained cash deposits into his bank account in late 2020 and early 2021.   The unexplained cash deposits above are consistent with the defendant engaging in peer-to-peer sales involving the missing 712.6 BTC.[2]   On January 12, 2021, the defendant deposited a $52,000 check with the notation "Crypto" in the memo line, further supporting the conclusion that he was selling bitcoin in exchange for U.S. dollars.   The defendant used the proceeds of the "Crypto" check to purchase a 2018 Audi S5 luxury automobile.



**Figure 3: Check Deposit for "Crypto"**

---

[2]  Several witnesses interviewed by federal law enforcement about Larry Harmon's activities prior his arrest identified the defendant as someone who had assisted Larry Harmon in selling bitcoin for cash in peer-to-peer transactions. The defendant's involvement in these earlier peer-to-peer transactions shows that he would know how to go about arranging similar peer-to-peer transactions to liquidate the illicitly obtained 712.6 BTC.

Records obtained from the cryptocurrency exchange Bittrex showed that the defendant opened an account on January 30, 2021, using a ProtonMail email address.[3]   Between February 5, 2021 and February 8, 2021, the defendant deposited 26.55 BTC into his account, valued at approximately $983,000 at the time of the transactions.   On February 12, 2021, the defendant used the majority of his BTC deposits to purchase 16,079,260.6675007 in Dogecoin, an alternative cryptocurrency.

Records obtained from the cryptocurrency finance company BlockFi show that the defendant deposited approximately 67.62681465 BTC into a new BlockFi account on or about March 25, 2021, valued at more than $3.5 million at the time of the transaction.   The defendant used his ProtonMail address to register the BlockFi account.   Approximately 65.95 BTC was used as "loan collateral" for a loan to the defendant in the amount of $1,200,000.   The defendant used a portion of the $1,200,000 loan proceeds to purchase a luxury condominium unit in Cleveland, Ohio.

BlockFi flagged the defendant's March 25, 2021 bitcoin deposit for "close exposure to a Darknet Market and Ransomware."   BlockFi's analytics linked the March 25, 2021 transaction to the mixer ChipMixer.com.   BlockFi flagged another bitcoin deposit by the defendant on or about April 2, 2021 for "close exposure to a Mixing Service."

---

[3] ProtonMail is an end-to-end encrypted email service based in Switzerland.   ProtonMail markets itself as a "privacy" service and advertises that it does not collect any personal information or user IP logs.   *See* https://protonmail.com/.



Apr 08 02:01 pm
To: Gary Harmon  Show all
Hi Gary,

Thank you for being a valued BlockFi client. We have detected your deposit on 3/25/2021 as having close exposure to a Darknet Market and Ransomware. Such a source falls under BlockFi's prohibited uses. Please be more mindful of your deposit sources in the future.

If you believe you've received this warning in error, please provide proof of deposit source.

Sincerely,



**Figure 4: BlockFi Records**

Preliminary examination of the defendant's cellular phone, recovered pursuant to a search warrant, show that he spent bitcoin extravagantly at nightclubs, and that he used TapJets, a private charter jet company that accepts bitcoin as payment.






**Figure 5: Images from Defendant's Phone**

14

**F.  Arrest of Gary Harmon and Recovery of Multiple Trezor Devices and Seed Keys**

On June 28, 2021, a federal grand jury in the District of Columbia returned a sealed indictment against the defendant, Gary Harmon, on eight counts of Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); and Removal of Property To Prevent Seizure, in violation of 18 U.S.C. § 2232(a).

On July 28, 2021, federal agents arrested Gary Harmon at his luxury condominium unit in Cleveland, Ohio, and executed a residential search warrant there.   Agents also obtained a search warrant on July 29, 2021, for the Market Street apartment in Akron, Ohio that Gary Harmon formerly occupied and continued to use on occasion.   Among other things, agents recovered two Trezor-brand cryptocurrency storage devices and approximately 50 sets of seed words—including seed words handwritten on scraps of paper and contained in files on the defendant's phone and other devices.   Agents suspect that the Trezor devices have hidden wallets enabled (as with TREZOR ONE).   Agents used some of the seed words to successfully reconstitute and seize bitcoin wallets containing bitcoin valued at approximately $6,007.78.   The whereabouts of the vast majority of the missing 712.6 BTC remains unknown.   Forensic examination of the defendant's Trezors, phone, and other electronic devices is ongoing.

## **APPLICABLE LAW**

Under the Bail Reform Act, the Court "shall order" the defendant to be detained if it determines after a hearing that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

A finding of either danger to the community or risk of flight is sufficient for detention. *See United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995). "A threat of future dangerousness may be based on the risk that no conditions will reasonably prevent the defendant from obstructing justice." *United States v. DeGrave*, 2021 WL 1940536, at *8 (D.D.C. May 14, 2021) (internal quotations omitted). The government must prove danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f)(2). If the basis for detention is risk of flight, the government must prove that the defendant presents a risk of flight only by a preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). The government may present evidence by way of proffer, *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996), and "[t]he rules concerning admissibility of evidence in criminal trials do not apply" at a detention hearing, 18 U.S.C. § 3142(f).

In considering whether there are conditions of release which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community

that would be posed by the defendant's release.   18 U.S.C. § 3142(g).   As set forth more fully below, these factors weigh in favor of detaining the defendant.

## ARGUMENT

Each of the § 3142(g) factors weighs in favor of detention.   The defendant's offenses involved willful obstruction of his brother's criminal proceeding and technologically sophisticated criminal conduct.   The defendant is facing a Guidelines range of up to 19 years of imprisonment. The evidence against the defendant is circumstantial but strong.   The defendant has no job and no community ties, but he has the ability to remotely access tens of millions of dollars' worth of bitcoin that remains unaccounted for.   And the defendant's conduct raises serious concerns about prospective destruction of evidence or witness tampering.   In short, the defendant's pretrial detention is necessary to ensure both the safety of the community and that the defendant does not flee to evade prosecution.

### A.  The Nature and Circumstances of the Offense

As alleged in the Indictment, the defendant committed serious offenses involving the removal of more than 712.6 BTC that had been lawfully seized pursuant to a search warrant and was subject to forfeiture in Larry Harmon's criminal case.   The defendant did so knowing that the property represented his brother's illegal proceeds from operating the bitcoin money laundering service Helix, and knowing that the property had been seized and was part of the criminal proceeding against his brother.   Indeed, the defendant executed the transactions *after* he personally attended court hearings in his brother's case and heard testimony and argument about the unsecured bitcoin.   The defendant surreptitiously removed the 712.6 BTC stored on TREZOR ONE, lied to federal law enforcement agents about it, and laundered the purloined BTC through

Tor-based mixing services before embarking on a lavish spending spree with his brother's illegal profits.    The brazenness of the defendant's scheme weighs in favor of detention.

The defendant is a sophisticated cyber criminal who has exhibited a high level of operational security.    The security features enabled on TREZOR ONE represented the cutting edge of cryptocurrency security technology.    The defendant's ability to remotely reconstitute the SUBJECT WALLETS, transfer the Helix-derived bitcoin into new, unhosted wallets, and then gradually launder the bitcoin through two bitcoin mixing services reflects a significant degree of technological sophistication.    His subsequent precautions included laundering the illicit bitcoin through two Tor-based mixing services (similar to Helix), reflecting a working knowledge of Tor hidden services.    He began using an encrypted ProtonMail email service.    And he engaged in additional laundering of the illicit bitcoin proceeds—such as exchanging bitcoin for Dogecoin (a virtual currency laundering technique known as "chain-hopping") or using his bitcoin as collateral for a cash loan to purchase luxury real estate (severing any direct link between the illegal bitcoin and the funds used to purchase the luxury asset).

The defendant's crimes expose him to heavy punishment.    The defendant faces up to 20 years in prison on the money laundering counts as well as the obstruction count, *see* 18 U.S.C. § 1956(a)(1); 18 U.S.C. § 1512(c); and 5 years in prison for removal of property to prevent seizure, *see* 18 U.S.C. § 2232(a).    The government estimates his Sentencing Guidelines offense level for the money laundering counts alone will be 36, resulting in an advisory sentencing range of 188

months to 235 months of imprisonment.[4]   In addition, the money laundering counts expose the defendant to "a fine of not more than $500,000 or twice the value of property involved in the transaction, whichever is greater," 18 U.S.C. § 1956(a)(1)—meaning that the defendant could be fined up to twice the value of the $5.3 million in BTC he illegally obtained, or more than $10 million.   He is also liable for forfeiture of the 712.6 BTC and a forfeiture money judgment of at least the entire value of the $5.3 million in property "involved in" the money laundering offenses, and for the same amount representing the proceeds of the obstruction offense.[5]   *See* 18 U.S.C. § 982(a)(1); 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c).   The realistic prospect of 19 years in prison and millions of dollars in financial penalties provides a strong incentive to flee.

### B. The Weight of the Evidence Against the Defendant

The government's case against the defendant is circumstantial but strong.   This is an indicted case in which the grand jury found probable cause to believe the defendant is guilty of the charged offenses.   *See, e.g.*, *United States v. Johnson*, 212 F. Supp. 3d 126, 129 (D.D.C. 2016) (noting indictment is "not dispositive" but still relevant).   The defendant's presence at the two

---

[4] Assuming a violation amount of $5.3 million and the defendant's knowledge that any portion of the laundered property represented the proceeds of, or was intended to promote, Darknet drug trafficking activity, the government estimates the defendant's offense level as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2S1.1(a)(2) | Base offense level | 8 |
| U.S.S.G. § 2B1.1(b)(1)(J) | More than $3,500,000 | +18 |
| U.S.S.G. § 2S1.1(b)(1)(i) | Knew funds were proceeds of or intended to promote drug offenses | +6 |
| U.S.S.G. § 2S1.1(b)(1)(B) | Conviction for § 1956 | +2 |
| U.S.S.G. § 2S1.1(b)(3) | Sophisticated laundering | +2 |
| | **Total offense level:** | **36** |

Assuming criminal history category I, the total Guidelines range for offense level 36 is 188-235 months of imprisonment.

[5] The value of the illicitly obtained 712.6 BTC has since ballooned to more than $34 million, based on current market prices.   *See* https://coinmarketcap.com (last accessed Aug. 24, 2021) (showing BTC at $48,059.73).   All of this bitcoin, and any and all property traceable to it, would be subject to forfeiture regardless of current market value.

detention hearings was witnessed by several law enforcement agents; it shows the defendant was aware that the bitcoin stored on TREZOR ONE was lawfully seized pursuant to search warrant, that the funds represented illegal proceeds from Helix, and that the funds were claimed by the government in the criminal prosecution of the defendant's brother.   Evidence of the defendant accessing TREZOR ONE to obtain the 712.6 bitcoin includes objective email records showing automated messages from Trezor.io addresses corresponding to the laundering transactions, as well as the defendant's admissions to law enforcement agents that he obtained partial seed words from his brother (and destroyed the evidence afterwards).   Objective blockchain evidence shows that most of the 712.6 BTC was laundered through Tor-based mixing services.   Following that laundering activity, financial records show that the defendant experienced a rags-to-riches transformation fueled by a sudden infusion of unexplained bitcoin wealth—including bitcoin traceable back to the same Tor-based mixing services used to launder the missing 712.6 BTC. The defendant developed a new interest in encryption and operational security.   And the search warrants executed in this case recovered two Trezor devices and approximately 50 sets of seed words—attesting to the defendant's investment in cryptocurrency storage and security following his illicit acquisition.

The defendant may well argue that he did not understand that the 712.6 BTC was subject to forfeiture in the pending criminal case.   But that is irrelevant to the money laundering counts— the most serious offenses charged in the Indictment—which only require the defendant's knowledge that the property involved in the transactions represented the proceeds of "some form of unlawful activity," 18 U.S.C. § 1956(a)(1).   That element is satisfied by the defendant's knowledge that the property represented his brother's illegal proceeds from the bitcoin money

laundering service Helix.   In any event, the defendant was clearly aware, from his attendance at the detention hearings, that the government had lawfully seized the bitcoin stored on TREZOR ONE pursuant to a search warrant.   He was also aware that by removing the bitcoin stored on TREZOR ONE, he was impairing the government's claim over the funds and corruptly removing the funds from the Court's reach in the criminal proceeding.   His false statements to agents in July 2020 denying his involvement in the transfer, and the extreme lengths to which he went to conceal his connection to the funds, is further evidence of his consciousness of guilt.

The government's case against the defendant is strong, and the government anticipates that further forensic examination of the devices recovered through the search warrants in this case will yield additional evidence of the defendant's guilt.   The weight of the evidence supports pretrial detention.

### C.  The Defendant's History and Characteristics

The defendant's access to tens of millions of dollars in cryptocurrency weighs heavily in favor of detention.   Notwithstanding the defendant's recent spending spree, the majority of the missing 712.6 BTC remains unaccounted for.   That sum was worth approximately $5.3 million at the time of the bitcoin was first removed from TREZOR ONE, and it is currently worth more than $34 million.   The defendant has demonstrated the ability to remotely access and launder bitcoin from anywhere in the world with an Internet connection.   Evidence recovered from the defendant's cellular phone shows that he was a user or TapJets, a private charter jet company that accepts bitcoin as payment.   With tens of millions of dollars in cryptocurrency at his fingertips and a working knowledge of the Darknet—where false identification documents are readily

available for purchase—the defendant could finance his flight from prosecution for the rest of his life.

The defendant also lacks any substantial ties to the community.   He has no job, he was on unemployment for months, and before that he worked as a modest wage-earner in his older brother's company.   According to accounts from acquaintances in Ohio, the defendant's relationship with his family has suffered since the illicit bitcoin movements and the repercussions on his brother's criminal case.   Although the defendant's lavish spending may have won him friends and admirers in recent months, these are not the kinds of community ties that are likely to discourage his flight from prosecution.

### D.  Nature and Seriousness of the Danger of Future Obstruction

Finally, the defendant poses a danger of future obstruction.   Courts in this district and elsewhere have recognized that the risk of future obstructive conduct may justify pretrial detention. *See, e.g.*, *DeGrave*, 2021 WL 1940536, at *8 (collecting cases); *United States v. Robertson*, 608 F. Supp. 2d 89 (D.D.C. 2009); *United States v. Gamble*, 2019 WL 6877755 (D.D.C. Dec. 17, 2019).   In *Gamble*, the defendant was charged with a variety of obstruction offenses under 18 U.S.C. § 1512 and 18 U.S.C. § 1591 for attempting to destroy evidence in a child sex trafficking trial involving his associate.   2019 WL 6877755, at *1-2.   Judge Collar-Kotelly found that the risk of obstruction—in combination with other factors—weighed in favor of detention:

> While Mr. Gamble does not have an extensive history of obstruction of justice, the weight of the evidence presented by the Government supports that he has recently and in a related proceeding obstructed justice by attempting to, for instance, hide or conceal relevant evidence, which in turn presents a serious danger that he may do so again in his own case.

*Id.* at *6.   Here, the defendant's indicted conduct involves obstruction of the criminal prosecution of his brother and related criminal forfeiture proceeding, as well as removal of property that had been lawfully seized pursuant to a search warrant.   Even the defendant's fantastical version of events belies his lack of concern for obstructive conduct; in an attempt to exonerate himself, the defendant told agents that he destroyed evidence by flushing the USB drive he received from his brother down the toilet at his gym.   The defendant's brazen actions demonstrate lack of respect for the Court's authority and any release conditions it may impose.   *See DeGrave*, 2021 WL 1940536, at *16 ("Mr. DeGrave's demonstrated a lack of respect for the courts and the rule of law . . . raises further concern that he would not comply with any release conditions that this Court might impose.").   This factor weighs in favor of detention.

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combination of conditions that will reasonably assure the safety of the community from future acts of obstruction of justice.   The government also submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no conditions or combination of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

23

Respectfully submitted,
CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793


BY:    */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov