UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | 1:21-cr-00433-BAH |
| GARY JAMES HARMON | : | |
| | : | |

**DEFENDANT GARY HARMON'S MEMORANDUM OF LAW IN OPPOSITION
TO THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The Bail Reform Act requires that pretrial detention for Mr. Harmon be the absolute last resort. Pretrial detention is only appropriate if the government meets its heavy burden of proving that there is no condition or group of conditions, short of detention, that can reasonably ensure that Mr. Harmon will not pose a risk to the community or a serious risk of flight if released. Here, the government cannot meet its burden. Thus, Mr. Harmon should be released pretrial.

As to serious flight risk, Mr. Harmon is a United States citizen who has lived in the United States his entire life and has both a bright future and a loving family in Ohio. None of the charges against him carry a mandatory minimum term of incarceration,[1] and he has every incentive to remain and vigorously defend himself, rather than flee and become a life-long fugitive. *See* Argument, Point B.

As to community danger, Mr. Harmon is not charged with a crime or act of violence and has no criminal history of any kind. The only "community danger" the government identifies is a supposed "danger of future obstruction." Govt. Mem. at 22. The government, however, points to no obstruction of the instant case by Mr. Harmon, and speculation that he might do something in

---

[1] Mr. Harmon is accused of eight counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); obstruction of an official proceeding, in violation of 18 U.S.C. ¶ 1512(c)(2); and removal of property to prevent seizure, in violation of 18 U.S.C. § 2232(a).

the future is not clear and convincing evidence of community danger justifying detention. More is needed. *See* Argument, Point C.

Moreover, conditions short of detention exist that will reasonably assure Mr. Harmon's future appearances in court and that no "future" obstruction takes place. Risk of flight is reasonably and readily prevented; Mr. Harmon's passport has been seized and imposing electronic monitoring, house arrest, and other restrictions would serve to reasonably assure that Mr. Harmon will return to Court. Likewise, future obstruction can be reasonably prevented by, for example, imposing conditions that block Mr. Harmon from contacting his brother, Larry Harmon, and any witnesses in this case, and from accessing computers and the Internet. In this regard, Mr. Harmon has a place to live in Cleveland, Ohio, and reputable and responsible third-party custodians for Mr. Harmon (his girlfriend and her parents) that will help ensure his compliance with his release conditions while he contests the charges against him. Given all this, Mr. Harmon is entitled to pretrial release under the Bail Reform Act. *See* Argument, Point D.

Notably, in *United States v. Larry Harmon*, 1:19-CR-395- BAH, the government opposed revocation of an order of detention lodged against Mr. Harmon's brother, Larry Dean Harmon, for many of the same reasons the government invokes here – (i) being a criminal defendant in a case with substantial monetary and incarceratory penalties; (ii) purportedly having electronic access to hidden funds; and (iii) being internet-savvy with access to dark web connections that would allow him to obtain false papers and flee to Belize or anywhere else in the world. This very Court, however, rejected the government's arguments. The Court revoked the order of detention and granted Larry Harmon his release, conditioned on, *inter alia*, home detention in Ohio, location monitoring, travel restrictions, computer restrictions, internet restrictions, and prohibitions on opening new financial accounts or making cryptocurrency transactions. *Id.* at ECF Docket Nos. 20

and 21.  The same result of release is called for here.

## ARGUMENT
## THE COURT SHOULD GRANT MR. HARMON PRETRIAL RELEASE

A.     **The applicable legal standard**

Incarceration before trial "substantially impacts the quality of the[] defense" and "increase[s] the likelihood that the detainee will be convicted, imprisoned, and subjected to prolonged deprivation of liberty, privacy, and other fundamental elements of human existence." Samuel R. Wiseman, *"Pretrial Detention and the Right to be Monitored,"* 123 YALE L. J. 1344 (2014). Accordingly, pre-trial detention is discouraged. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (same); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). Courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Consistent with these principles, the presumption of innocence afforded to every defendant, and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 540 (D.C. Cir. 2019). Here the government contends

Mr. Harmon is a danger to the community and a serious flight risk. The government is wrong on both counts.

The government bears the heavy burden of proving dangerousness by clear and convincing evidence, *Munchel*, 991 F.3d at 1280,[2] and a serious risk of flight by a preponderance of the evidence, *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). When conducting its "risk of flight" inquiry, the Court must consider the factors enumerated in 18 U.S.C. § 3142(g), including (i) the nature and circumstances of the offense charged, (ii) the weight of evidence against the defendant, and (iii) the history and characteristics of the defendant. *See* 18 U.S.C. § 3142(g); *Sabhnani*, 493 F.3d at 75. For its "dangerous inquiry," the Court must consider these three factors as well, but then must also consider the nature and seriousness of the danger posed by Mr. Harmon to any person or the community if he is released. *See* 18 U.S.C. 3142 (g)(1)-(4); *Munchel*, 991 F.3d at 1279.

Further, because the Bail Reform Act favors release, the government carries the additional burden of demonstrating to the Court that no condition or conditions of release exist that can reasonably assure Mr. Harmon's appearance in court or the safety of the community from the identified danger. *See* 18 U.S.C. § 3142(e); *Sabhnani*, 493 F.3d at 75; *Simpkins*, 826 F.2d at 96; *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (emphasizing that "requirement

---

[2] In some cases, 18 U.S.C. § 3142(e) applies a rebuttable presumption that a defendant must be detained to ensure community safety. That rebuttable presumption does not apply here, and the government does not contend that it does. In any event, a defendant only bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight. *See, e.g., United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Dabney*, 2020 U.S. Dist. LEXIS 67127, *2 (D.D.C. 2020) (finding presumption rebutted). And "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

that courts expressly consider alternative conditions is central to the Bail Reform Act"). And, because pretrial detention is truly a last resort, district court judges must "make explicit their findings with regard to the adequacy [or inadequacy] of possible conditions for release." *United States v. Coonan*, 826 F.2d 1180, 1186 (2d Cir. 1987); *Berrios-Berrios*, 791 F.2d at 253 ("Whatever the district court ultimately decides, it should explicate the reasons underlying its conclusion.").

Here, the government is unable to meet its burden of proof as to either community danger or flight risk. In addition, it is unable to show there is no reasonable alternative to pretrial detention such that risk of flight and dangerousness cannot be ameliorate by the Court setting strict conditions of release.

**B.** **The statutory presumption supports Mr. Harmon release on bail; he does not pose a serious risk of flight and his appearance in court can be reasonably assured**

Mr. Harmon was born and raised in the United States. He has lived in Ohio his entire life and his family, friends, girlfriend, and her family, all reside in Ohio as well. He is a young man with no prior criminal history, a university education (Kent State), and a bright future. These are precisely the type of strong community ties, personal history, and characteristics that militate against a serious risk of flight. *See, e.g., United States v. Chimurenga*, 760 F.2d 400, 402 (2d Cir. 1985) (upholding trial court's finding that defendant was not a flight risk, despite strong evidence of involvement in armed robbery, where defendant had no criminal record and was in school). If Mr. Harmon were to flee, he would be turning his back to all those who love and trust him and leaving the only life he has ever known to become a life-long fugitive. Thus, he has every incentive to return to court and defend himself against the government's allegations.

In response, the government unpersuasively contends Mr. Harmon "lacks any substantial ties to the community" because he "has no [current] job," and was only "a modest wage-earner"

5

before that. Govt. Mem. at 22. The government also proffers some unsourced gossip that his "relationship with his family has suffered" because of the instant prosecution. *Id.* While the government may believe otherwise, even "modest" jobs are worthwhile, and Mr. Harmon's family ties endure. But no more eloquent proof of Mr. Harmon's strong and abiding ties to his Ohio home and community can be found than it the letter to the Court from Mr. Harmon's girlfriend, Ms. Alyssa M. Pisani (attached hereto as **Exhibit A).** Ms. Pisano works for the Cleveland Indians organization and has known Mr. Harmon since 2013, although they only began a serious relationship this year. She writes:

> When Gary is released, I plan on fully supporting him in any way necessary. I currently live with my parents in Mayfield Heights, Ohio.[3] Upon Gary's release, I intend on moving in with him. I have the full support and backing of my parents to live with Gary and support his well-being. I have already begun the process of moving my personal belongings into the condominium. I believe that Gary is in no way a flight risk. My family and I will be Gary's support system and make sure that he follows any protocols and conditions the court puts in place, and make sure he is present for any future hearings.

8/23/2021 Letter from Alyssa M. Pisani to Court (Ex. A) at 1. Others who support Mr. Harmon have also written to the Court and expressed their willingness to support and be a third party custodian for Mr. Harmon. (Ex. B).

Like his brother, Mr. Harmon's history and characteristics strongly support his pretrial release. And, like his brother, the Court should send Mr. Harmon to home detention in Ohio under 24/7 GPS electronic monitoring and the watchful eyes of Ms. Pisani, her parents, Gary's family and friends, and frequent home visits from Pretrial Services under the High Intensity Supervision Program ("HISP").[4] *See also United States v. Dabney*, 2020 U.S. Dist. LEXIS 67127, *10-13 (D.D.C.

---

[3] Mayfield Heights, Ohio is just 13 miles from Cleveland, Ohio. *See* https://www.distance-cities.com/distance-mayfield-heights-oh-to-cleveland-oh.

[4] HISP is a comprehensive program of electronic monitoring, supervision, and intensive case management for higher risk defendants. Https://www.psa.gov/sites/default/files/Brochure%20-%20HISP%207.7.17%20-%20Ready%20for%20Print.pdf. Under HISP, Pretrial Services provides increased monitoring and a variety of other measures "to promote compliance with supervision conditions,"

2020) (changing pretrial detention to release under HISP, with electronic monitoring, condition of permanent home confinement, and all the other "rules, regulations, and requirements of the [HISP] Program that are listed in the orientation contract, which is incorporated herein by reference").

As to the weight of the government's evidence,[5] this factor also supports Mr. Harmon's release from detention. The government concedes that its "case against the defendant [Mr. Harmon] is circumstantial." Govt. Mem. at 19. The government further concedes that Mr. Harmon "may well argue that he did not understand that the 712.6 BTC was subject to forfeiture in the pending criminal case [against his brother]. *Id.* at 20. Finally, the government accepts that it must prove at trial that the BTC at issue were the proceeds of unlawful activity. *Id.* Yet, the government provides little to no evidence supporting any of these elements of the alleged wrongdoing. Therefore, this case is far from those where the weight of evidence is so overwhelmingly against the defendant that a reasonable presumption exists that he or she would rather flee than face an inevitable conviction. *Cf. United States v. Jackson*, 823 F.2d 4, 6 (2d Cir. 1987) (overwhelming evidence from nine different confidential sources to support allegations, including first-hand testimony of defendant's involvement in heroin deals); *United States v. Duncan*, 897 F. Supp. 688, 692 (N.D.N.Y. 1995) (five confidential informants willing to testify that defendant supplied, received, packaged, prepared, and sold cocaine in various forms for at least two years).

As to the impact of the charges on Mr. Harmon's incentive to flee, this factor also supports

---

including (i) weekly in-person contact with a Pretrial Services Officer; (ii) at least weekly drug testing; (iii) electronic location monitoring; (iv) home confinement or curfew; and (v) weekly reports to the Court on program compliance. *Id.*

[5] Because of the presumption of innocence, some Courts have identified "weight of the evidence" as the "least important" of the detention factors, *See, e.g., United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors." (quoting *Motamedi*, 767 F.2d at 1408).

his release from pretrial custody. Mr. Harmon is considered innocent until proven otherwise and he intends to forcefully contest the charges against him. In this regard, the case against Mr. Harmon is, in many ways, connected to the results of his brother's case. As the government acknowledges, however, "mixing" or "tumbling" is not *per se* illegal, and the government's newly attempted prosecution of bitcoin mixers like Larry Harmon involves a "combination of unusual elements – including the Darknet, Tor, and bitcoin – [that] will undoubtedly raise issues of first impression and require specialized analysis and preparation for trial." 1:19-CR-395- BAH [ECF Docket No. 11 at p. 6]. Thus, the government faces real challenges and uncertainty in trying to obtain a verdict against Gary Harmon here.

Moreover, the charges against Mr. Harmon have no mandatory minimum and, while the government touts its calculation of the guidelines range[6] in this case (*see* Govt. Mem. at 18-19) as supporting a serious flight risk, the advisory Guidelines range is just one of multiple sentencing factors and "are just that, guidelines [...] they truly are advisory." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented," *Gall v. United States*, 552 U.S. 38, 50 (2007), and an "appropriate consideration of all the [sentencing] factors listed in § 3553(a)," not just the Guidelines range. *Pepper v. United States*, 562 U.S. 476, 490 (2011).

Given Mr. Harmon's personal history of hard work, education, and no prior criminal conduct, there is no reason for the government – or Mr. Harmon – to presume or anticipate that the Court will or must impose a guidelines sentence, should Mr. Harmon even be convicted either

---

[6] The government inflates its guidelines range calculation by, for example, not including acceptance of responsibility in its calculation and baldly assuming the government will be able to prove that the funds at issue were drug proceeds, and that Mr. Harmon knew that to be the case. See Govt. Mem. at 19 n.4.

8

by plea or trial. Certainly, the government's speculation that Mr. Harmon will abandon his entire life because of an advisory guidelines range, rather than fight the charges against him, is unpersuasive.

In any event, in finding a serious risk of flight, more is needed than the mere potential for a long sentence. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam).[7] For example, evidence supporting a finding of a serious flight risk includes skill in avoiding surveillance, prior flight from law enforcement, and use of aliases. *Id.* None of these risk factors are present here; Mr. Harmon possesses none of these skills. He has never previously fled or tried to exit the county illegally, and the skills he has are relevant to the virtual world, but not the real world. That Mr. Harmon has not left Ohio since his brother's arrest is telling. He did not flee even after being questioned by authorities in this case, and is not likely to flee now.

No evidence supports the government's rank speculation (Govt. Mem. at 21) that, if Mr. Harmon is released from custody, he will know how to buy fake travel documents and how to avoid passport and border controls. The government is fully able to monitor and regulate entry and egress from the United States, and the government adduces no evidence (because none exists) that Mr. Harmon has any skill or experience in travelling under a false name or otherwise evading government monitoring. He has never travelled (or lived) under a false or fictitious name. To flee,

---

[7] *See also United States v. Hanson*, 613 F. Supp. 2d 85 (D.D.C. 2009) (ordering pretrial release of defendant where (i) defendant, while a naturalized U.S. citizen had "strong ties to [her home country of] China;" (ii) the charges against the defendant "were serious and carried a potential for a significant period of incarceration;" and (iii) the "government has strong evidence against" the defendant "including her own statement to investigators that she smuggled the UAV autopilot components out of the United States [in violation of IEEPA and Export Administration Regulations] and knew there were licensing requirements for such items"); *United States v. Ng*, 15 Cr. 706 (VSB) (S.D.N.Y) (granting bail to defendant Ng who had no ties to the United States; was not a citizen; did not speak English; had seemingly endless wealth with which to flee; and was an older man, for whom a 20-year sentence could effectively be a life sentence).

Mr. Harmon would have to do far more than plug in his computer. He, a person with no criminal history, would have to break home confinement under the nose of his custodian and others and obtain false documents, all while evading government monitoring of both his ankle monitor and the U.S. border. He would have to entire life behind – friends, family, girlfriend – and would be impoverishing any sureties who, in an act of trust and good faith, agreed to be jointly and severally liable on a bond. And, he would be doing all this to avoid fighting charges of non-violent crimes that include no mandatory minimums and to which he has reasonable defenses. This makes no sense.  As Judge Tanya Chutkan noted in *United States v. Naik*, 1:19-cr-00373-TSC (D.C. Cir.), and as this Court noted in *Larry Harmon, supra*, resolving any such attenuated and highly speculative flight concern does not require incarceration, but the setting of appropriate bail conditions.

In arriving at those bail conditions, the standard is not, as the government would have it, a 100 percent certainty. The Bail Reform Act merely requires conditions that ameliorate the risk of flight and "reasonably assure" a defendant's return to court. See 18 U.S.C. § 3142(b) and (c)(1)(B); *United States v. Madoff*, 586 F.Supp.2d 240, 249 (S.D.N.Y. 2009) (Bail Reform Act "does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance"). Here, the Court readily may set a bail package that features a series of meaningful bail conditions that will deter any serious flight risk and reasonably assure Mr. Harmon's return to court. See, e.g., Larry Harmon, 1:19-CR-395-BAH [ECF Docket Nos. 20 and 21] (addressing government's concerns by imposing a range of bail conditions, including home confinement, electronic and physical monitoring, [8] travel restrictions, computer restrictions, internet restrictions, and

---

[8] Courts have found that GPS monitoring and home confinement can ensure attendance in court even for those charged with very serious crimes. *See, e.g.*, "Former IMF chief Dominique Strauss-Kahn granted bail," May 20, 2011, available at http://goo.gl/oYgRM9, where Strauss-Kahn, who was charged with rape and had the means to flee; was released on bail terms that included electronic monitoring and home

10

prohibitions on opening new financial accounts or making cryptocurrency transactions); *United States v. Naik*, 1:19-cr-00373-TSC (D.C. Cir.) (finding that government's concern that Mr. Naik, a foreign citizen charged with child pornography offenses that carried a mandatory minimum sentence, could go to the Afghani consulate, get a new passport, and flee the U.S. was reasonably addressed by release conditions requiring that Mr. Naik be accompanied by a third-party custodian and only leave the home to appear in Court; that Naik not apply for any international travel documents; and that he not visit any consulate).[9] If the Court deems it necessary, Mr. Harmon is ready to be subjected to similar restrictions as those in *Larry Harmon* and in *Naik* as part of his release.

Mr. Harmon's life, interests, and family in the United States; his lack of criminal history; his strong ties to his current life in Ohio and demonstrated desire to continue living and working there all show that he is not a flight risk of any kind, let alone a serious one. Instead, he has every incentive to continue to appear in court and fight the charges against him. Further, the government cannot meet its burden of proving that only pretrial detention can reasonably assure his future appearances in court. For all these reasons, Mr. Harmon should be released pretrial.

**C.    Mr. Harmon should be released on bail because the government has failed to clearly and convincingly prove that Mr. Harmon is such a danger to a person or community that pretrial detention is the only alternative.**

Mr. Harmon has no criminal history of any kind, and is not charged with a crime of violence, of any violent act, or of threatening anyone. The only "danger" posited here is the government's speculation that, based on past alleged acts of obstruction in his brother's case

---

confinement.

[9] The docket sheet in *Naik* proves the efficacy of these release conditions. *See* **Exhibit __** (Naik Docket Sheet). Mr. Naik did not visit any consulate, did not flee, appeared for trial, was convicted, and a motion to set aside his conviction notwithstanding the verdict granted.

(disposing of a thumb drive and taking bitcoin from a government wallet), Mr. Harmon poses a "danger of future obstruction" in his case. Govt. Mem. at 22-23. The government's speculation – devoid of any facts or evidence of any specific future intent to obstruct -- does not meet the government's heavy burden of proving, by clear and convincing evidence, that Mr. Harmon is a danger to the community, and that this danger can only be reasonably prevented by pretrial detention. *See* 18 U.S.C. 3142 (g)(1)-(4); *Munchel*, 991 F.3d at 1279.

While the government contends that Mr. Harmon's alleged actions show that Mr. Harmon will not honor any release conditions the Court may impose (Govt. Mem. at 23), the government can point to no violation of any order directed to Mr. Harmon. The government also improperly glosses over the fact that the proposed/potential release conditions available to the Court are far removed from any sort of honor system. If released, Mr. Harmon will be subject to home confinement, 24/7 GPS monitoring, monitoring by a third-party custodian, weekly in-person contact by Pretrial Services, weekly updates to the Court, and many other restrictions that will reasonably prevent any purported future obstruction. *See* Argument, Point D; *see also supra* at fn.4 (discussing HISP program).

It is well-settled that a threat of future dangerousness "does not arise whenever a defendant is charged with obstructive conduct." *United States v. DeGrave*, __ F.Supp.3d __, 2021 U.S. Dist. LEXIS 92102, *23 (D.D.C. May 14, 2021). More is required – usually witness tampering. *Id.* at *22-23 (collecting cases). In all events, there must be an identified serious and genuine threat that, absent pretrial detention, the defendant will materially obstruct the judicial proceeding at issue. *Id.* at *23 (citing *Salerno*, 481 U.S. at 753). The three cases cited by the government in its memorandum of law – *DeGrave, Robertson,* and *Gamble* (Govt. Mem. at 22-23) – show just how different the facts of the instant case are from those where the court finds pretrial detention is the

only available way for the court to prevent future obstruction.

In *DeGrave*, the defendant was placed in pretrial detention because (i) he posed a risk of future obstruction *and* future violence; (ii) he had both deleted email messages and directly tampered with witnesses in his judicial proceeding, urging those witnesses to lie for him; and (iii) there was no third-party custodian who would reside with the defendant, monitor his physical movements, and "ensure that he does not and would not utilize devices" to continue his witness tampering. 2021 U.S. Dist. LEXIS 92102, at *43-48. Here, of course, (i) there is no risk of future violence; (ii) the purported thumb drive destruction and bitcoin removal took place in a different proceeding; (iii) there has been no witness tampering of any kind; and (iv) there is a third-party custodian(s) available to ensure Mr. Harmon's compliance with release conditions. *See* 8/23/2021 Letter from Alyssa M. Pisani to Court (Ex. A) at 1 ("Upon Gary's release, I intend on moving in with him. … My family and I will be Gary's support system and make sure that he follows any protocols and conditions the court puts in place, and make sure he is present for any future hearings.").

*United States v. Robertson,* 608 F.Supp.2d 89 (D.D.C. 2009), did not involve "isolated acts or instances" of obstruction. *Id.* at 92. Rather, the three defendants worked together in a "carefully orchestrated, multi-faceted effort" to obstruct the trial of another member of their narcotics gang. *Id.* "The lengths to which these three defendants went to obstruct justice is truly extraordinary and utterly disturbing." *Id.* at 91. Among other things, they manufactured false photographic evidence; provided perjured testimony; bribed witnesses to provide false testimony to investigators and prosecutors; and prevented one witness from testifying at trial by moving her to an undisclosed location during trial. *Id.* at 90-91. Plainly, this is not the situation here.

In *United States v. Gamble*, 2019 U.S. Dist. LEXIS 218096 (D.D.C. Dec. 17, 2019), the District Court denied Gamble's motion for reconsideration of his pretrial detention. The *Gamble* case involved charges – sex trafficking of children – so severe that there is a presumption of

dangerousness under the Bail Reform Act, and the court found Gamble "had not come forward with sufficient evidence to rebut the presumption of dangerousness." *Id.* at *10. The court also found that the serious nature of the crime and the presumption of danger to the community stemming from that crime distinguished the *Gamble* case "from others in which the potential for further obstruction was found not to pose a danger." *Id.* at *18 (citing *United States v. Khashoggi*, 717 F. Supp. 1048, 1051 (S.D.N.Y. 1989) (no detention in case where obstruction related to wire fraud charge)).

Importantly, the D.C. Circuit reversed the decision relied on by the government in its memorandum of law, remanding the case for further proceedings. In doing so, the D.C. Circuit explained that the District Court "did not adequately explain in view of the entire record why it found by clear and convincing evidence that appellant would obstruct justice in the future, how he would do so, or why no condition or combination of conditions will reasonably assure the safety of the community." *United States v. Gamble*, 2020 U.S. Dist. LEXIS 118007, *2 (D.D.C. April 13, 2020) (quoting D.C. Circuit Judgment). On remand, the District Court released Gamble from pretrial detention for several reasons, including because it rejected the government's speculation that Gamble might tamper with witnesses if released, when his only obstructive act was attempting to conceal physical evidence. *Id.* at *6-10.

Moreover, the District Court held that detention was not necessary because other release conditions would be sufficient to ameliorate any community danger:

> [T]he Court can impose conditions that will assure the safety of the witnesses, evidence, and the community from any potential obstruction efforts. For instance, the Court can release Mr. Gamble to the High Intensity Surveillance Program ("HISP"), including the use of an ankle bracelet and/or GPS monitoring, or require Mr. Gamble to reside at his Baltimore address and not travel except for legal consultation, court proceedings, or his employment. The Court can also order that Mr. Gamble not contact any witness affiliated with this case or the case against Mr. Cole by any method, including through any third party, social media, cell phone, or

> any other means of communication. The fact that Mr. Gamble did not appear to have attempted to contact any of the witnesses during the month after his interview and before his arrest further assures the Court that he will abide by any terms of his release. And if he does not, he faces the prospect of returning to the D.C. Jail.

2020 U.S. Dist. LEXIS 118007, at *10-11. The same result is called for here because, as in *Gamble*, the government has not met its heavy burden of proving dangerousness by clear and convincing evidence.

The government's purported concern of "future obstruction" is undefined and speculative – the government does not identify with any specificity what "future obstruction" it fears Mr. Harmon may commit and how. In addition, the government cannot show that a robust set of conditions will be unable to reasonably assure "the safety of the witnesses, evidence, and the community from any potential obstruction efforts" by Mr. Harmon. *Gamble*, 2020 U.S. Dist. LEXIS 118007, at *10. For at least these reasons, the government cannot meet its danger burden, and the Court should release Mr. Harmon from pretrial detention.

**D.     Bail conditions that assure return to court can be set**

For all the reasons set forth above, Mr. Harmon does not pose a serious flight risk or a danger to the community if released until trial. But even if he did, rigorous bail conditions such as those imposed on his brother under HISP are sufficient to reasonably mitigate any community danger and assure Mr. Harmon's appearances in court.

If released, Mr. Harmon will be living under home confinement in Cleveland, Ohio while being constantly monitored, both electronically and physically. Moreover, Mr. Harmon does not object to the Court imposing any of the following additional bail conditions, which were previously used successfully in *United States v. Naik*, 19 Cr. 373 (TSC), and *United States v. Larry Harmon,* 1:19-CR-395- BAH, discussed *supra*:

- The government may continue to hold his passport until completion of trial and further order of the Court.

15

- Mr. Harmon may only leave home confinement when accompanied by a third-party custodian.

- Mr. Harmon is to refrain from contacting or entering a consulate or embassy to obtain a passport, visa, or any other travel document.

- Mr. Hanson is to have no contact or communication, physical or electronic, with his brother or any other witness in this case.

- Mr. Harmon is to refrain from any internet or online access (other than Zoom meetings with his attorneys) and must allow Pretrial Services permission to monitor internet use and browser history.

- Mr. Harmon is prohibited from opening new financial accounts or making cryptocurrency transactions.

## **CONCLUSION**

The legal presumption in this case is that Mr. Harmon should be released, and that presumption has not been overcome by the government here.

*First*, the government has failed to prove, by clear and convincing evidence, that Mr. Harmon poses a significant danger to the community requiring detention. *Second*, the government has failed to prove, by a preponderance of the evidence, that Mr. Harmon poses a serious flight risk. *Third*, the government has failed to prove that no reasonable alternatives exist to having Mr. Harmon detained before trial. Accordingly, the Court should order Mr. Harmon's release with strict bail conditions and grant him such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 3, 2021

                                       Respectfully submitted,

                                       */s/ Sabrina P. Shroff*
                                       Assistant Federal Public Defender
                                       Counsel for Mr. Gary James Harmon

cc: All counsel of record (by ECF)