UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | 1:21-cr-00433-BAH |
| GARY JAMES HARMON | : | |
| | : | |

### DEFENDANT GARY HARMON'S RESPONSE TO THE GOVERNMENT'S "NOTICE REGARDING FAILURE TO REACH AGREEMENT ON PROPOSED CONDITIONS OF RELEASE"

Mr. Gary Harmon, through counsel, respectfully submits this response to the government's "Notice Regarding Failure to Reach Agreement on Proposed Conditions of Release" ("Notice").

### BACKGROUND

1.      Attached hereto as **Exhibit 1** is Mr. Harmon's draft brief to the Court, sent to the government on September 12, 2021, that the government references in Paragraph 3 of the Notice. That draft brief, incorporated fully herein by reference, raises the Fifth Amendment concerns resulting from the government's insistence that Mr. Harmon's pretrial detention should continue until the government receives the cryptocurrency it contends Mr. Harmon stole.

2.      As explained in the draft brief (Ex. 1 hereto), ordering Gary Harmon to disclose to the government the seed recovery keys, access to hidden wallets, and other keys needed to transfer cryptocurrency – a condition suggested by the Court for consideration by the parties at the hearing on September 10, 2021 – would effectively compel  Mr. Harmon to give testimonial evidence against himself in violation of his constitutional rights. *See* U.S. Constitution, Fifth Amendment; *Miranda v. Arizona*, 384 U.S. 436 (1966).

3.      Indeed, the government goes further than the Court. The Court suggested that Mr. Harmon "provide directly to representatives of the United States access to any and all cryptocurrency within the defendant's possession, custody and control, including in disclosing

1

seed recovery keys, access to hidden wallets, and other keys needed to transfer cryptocurrency." *See United States v. Larry Harmon*, 19 Cr. 395 (BAH), Docket Entry No. 26 (stating suggested condition). By contrast, the government demands not just disclosure, but unconditional success.

4.      Per the government's proposed conditions of release, the government will only agree to Mr. Harmon's pretrial release "following confirmation that all outstanding cryptocurrency assets have been secured." Notice (Ex. A) at 1; accord Notice ¶ 4 (government's proposed conditions of release "triggered by and conditioned upon the defendant's … full return of the cryptocurrency at issue"). The government values that cryptocurrency at $37,951,416. *Id.* at 3 n.1.

5.      The government contends that, absent the successful return of all the cryptocurrency, Mr. Harmon is a serious flight risk and a danger to the community, *and* that this serious risk and community danger cannot reasonably be mitigated by any other conditions, including the rest of the release conditions proposed by the government. Notice ¶¶ 4, 9, Ex. A.

6.      Regarding Mr. Harmon's Fifth Amendment concerns against self-incrimination, the government "offered to extend limited act-of-production immunity for the act of the transfer itself" (Notice ¶ 4 and Ex. A), but it declines to extend that narrow immunity to any derivative use of the information provided, and also demands that Mr. Harmon waive his rights under *Kastigar v. United States*, 406 U.S. 441 (1972) (placing on government burden of proving affirmatively that proposed evidence is derived from a legitimate source wholly independent of the compelled testimony). *See* Notice ¶¶ 4, 6-7, Ex. A.

7.      This single release condition is the only remaining bail dispute between the parties. The other release conditions proposed by the government (Notice, Ex. A) are agreeable.

## DISCUSSION

8.      The parties have made significant progress on the issue of bail. The sole remaining

issue is whether the Court must condition Mr. Harmon's release on the return of the cryptocurrency that is the subject of this prosecution. The Court need not – and should not – impose that condition.

9.      "Our system of criminal justice embraces a strong presumption *against* detention." *United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009) (emphasis added). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (same). Courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

10.     Here, the government seeks to impose a condition that will cause Mr. Harmon to implicate himself in the charged offense, in violation of Mr. Harmon's constitutional right against self-incrimination. Effectively, the government seeks to use the threat of continued pretrial detention to coerce a confession from Mr. Harmon. Indeed, the government squarely admits that it intends to use any return of the cryptocurrency in building its case-in-chief, and also gripes that having to prove that any evidence it proffers at trial was properly obtained and untainted by the incriminatory action it seeks to coerce is too "burdensome" for it. Notice ¶ 7.

11.     Self-incrimination should not be a bail requirement, period.

12.     Moreover, while Mr. Harmon continues to urge that the government has not met its burden of proving either flight risk or community danger, the government also has not met its burden of proving that its proposed condition is necessary to release. The Bail Reform Act does not require foolproof conditions, only reasonable conditions. *United States v. Hassanshahi,* 989 F.Supp.2d 110, 118 (D.D.C. 2013); *United States v. Madoff*, 586 F.Supp.2d 240, 249 (S.D.N.Y.

2009). The other conditions proposed by the government – which includes (i) home detention in Cleveland, Ohio; (ii) a third-party custodian present in the home to ensure Mr. Harmon's compliance with release conditions; (iii) location monitoring by pretrial to ensure Mr. Harmon stays in the home; (iv) no passport or other travel documents; (v) reporting every contact with law enforcement; (vi) monitoring of Mr. Harmon's electronic device use by pretrial; (vii) no use of any Internet-connected device, other than to contact defense counsel; (viii) no new financial accounts; and (ix) no direct or indirect cryptocurrency transactions – are sufficient to reasonably meet the government's professed flight and community danger concerns.

13.     The government unpersuasively contends that all these other conditions are rendered a complete nullity if Mr. Harmon is able to "remotely access and spend" the cryptocurrency at issue. Notice ¶ 9. These other conditions, however, already are reasonably designed to prevent Mr. Harmon from accessing or spending any funds – including the cryptocurrency the government has alleged, but not come close to proving, was taken by Mr. Harmon – or somehow fleeing or obstructing justice.

Finally, simply having alleged access to funds is not an adequate reason to deny bail, or to hold that no release conditions will suffice. *See, e.g., United States v. Ng*, 15 Cr. 706 (VSB) (S.D.N.Y) (granting bail to Ng despite defendant having seemingly endless wealth with which to flee); *United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007) (ordering release despite defendants possessing "ample means to finance flight," and finding that they "could, with relatively little disruption, continue to operate their highly lucrative business from any number of overseas locations"). Far more is needed but is not present here. *Cf. United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (in addition to vast wealth and substantial assets abroad, defendant had previously used aliases and false identities when traveling abroad, and there was strong

circumstantial evidence of his clear interest in fleeing the jurisdiction and his intent and preparation to do so, including numerous books and pamphlets seized from him describing means of creating and obtaining false identification).

**CONCLUSION**

The legal presumption in this case is that Mr. Harmon should be released on the least restrictive conditions. The self-incriminatory condition proposed by the government would violate Mr. Harmon's Fifth Amendment Rights under the United States Constitution and is not necessary to reasonably assure Mr. Harmon's future appearances or protect the community from Mr. Harmon. Accordingly, the Court should (i) decline to order the release condition in dispute between the parties; (ii) order Mr. Harmon's release into the custody of Ms. Alyssa Pisani, subject to all the other conditions proposed by the government; and (iii) grant Mr. Harmon such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 16, 2021                    Respectfully submitted,


/s/ Sabrina P. Shroff
Assistant Federal Public Defender
Counsel for Mr. Gary James Harmon


cc: All counsel of record (by ECF)