```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
  * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,         )  Criminal Action
                                  )  No. 21-433
vs.                               )
                                  )
GARY JAMES HARMON,                )  July 8, 2022
                                  )  9:35 a.m.
             Defendant.           )  Washington, D.C.
  * * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES**:

FOR THE UNITED STATES:
    CHRISTOPHER BRODIE BROWN
    DOJ-USAO
    601 D Street, N.W.
    Washington, DC 20530
    (202) 252-7153
    Email: christopher.brown6@usdoj.gov

    CATHERINE PELKER
    U.S. DEPARTMENT OF JUSTICE
    950 Pennsylvania Avenue NW
    Washington, DC 20530
    (202) 616-5007
    Email: catherine.pelker@usdoj.gov

FOR THE DEFENDANT:  EDWARD SMOCK
    Office of the Federal Public Defender
    District of Columbia
    625 Indiana Avenue, NW
    Washington, DC 20004
    (202) 208-7500
    Email: ned_smock@fd.org

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
    Official Court Reporter

*This hearing was held via videoconference and/or telephonically and is, therefore, subject to the limitations associated with the use of technology, static interference, etc.*

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Matter before the Court,
 3    Criminal Case No. 21-433, United States of America versus
 4    Gary James Harmon.
 5              Counsel, please state your names for the record,
 6    starting with the government.
 7              (Proceeding paused, technology interruption.)
 8              THE COURT:  All right.  Sorry for that
 9    interruption.
10              Could the parties identify themselves, Counsel,
11    starting with the government.
12              MR. BROWN:  Good morning, Chief Judge.
13    AUSA Christopher Brown for the government.
14              THE COURT:  Yes.  Good morning, Mr. Brown.
15              MS. PELKER:  Good morning, Your Honor.
16    Catherine Pelker for the United States.
17              THE COURT:  Yes.  Good morning.
18              And for the defense?
19              MR. SMOCK:  Good morning, Your Honor.
20    Ned Smock for the Federal Public Defender, on behalf of
21    Mr. Harmon who is joining us via video.
22              THE COURT:  Yes.  And, Mr. Smock, which FPD office
23    are you with?
24              MR. SMOCK:  I am new to the D.C. office.
25              THE COURT:  You are new to the D.C. office, okay.
```

1          Is this the first time you are appearing in front
2   of me?  I think it is.
3          MR. SMOCK:  I have been on a previous
4   videoconference, but those are not memorable.  So I
5   wouldn't --
6          THE COURT:  All right.  Well, with all of the
7   January 6th defendants, we have FPD offices from across the
8   country well represented.  I just wanted to check.
9          Okay.  Thank you for that clarification.
10         Good morning, Mr. Harmon.
11         How are you this morning?
12         THE DEFENDANT:  Hi, Your Honor.  I am doing well.
13  Thank you so much for asking.
14         THE COURT:  Yes.  Mr. Harmon, are you having any
15  difficulty hearing or seeing us on the video?
16         THE DEFENDANT:  No.  Everything is all good on my
17  end.
18         THE COURT:  Okay.  Good.  And, Mr. Harmon, after
19  consultation with your counsel, do you agree to participate
20  in today's status conference using video teleconferencing
21  technology rather than being physically in the courtroom?
22         THE DEFENDANT:  I do, yes.
23         THE COURT:  All right.  Thank you.
24         All right.  So I'm just going to turn this over to
25  Mr. Brown and Mr. Smock to let me know how you'd like to

1    proceed today.
2             MR. BROWN:  Yes, Your Honor.
3             We are, I believe, ready to schedule a trial.  We
4    have made a couple of plea offers to Mr. Harmon that have
5    not been accepted, so I think the next step is to schedule a
6    trial and a pretrial schedule.
7             We spoke briefly with Mr. Smock yesterday.  I
8    think we are looking at probably February 2023, at the
9    earliest.  For the Court's information, Ms. Pelker and I are
10   in about a three- to four-week jury trial during the month
11   of January; so we wanted to work around that.
12            THE COURT:  Well, I have about 11 trials already
13   scheduled between now and February 2023.  I am going to ask
14   you to submit to me three proposed dates for trial, pretrial
15   conference, and motion schedule by Monday at 2 p.m. so that
16   I can figure out where I am going to put this trial, whether
17   it's in 2022 or 2023.
18            So how long are you anticipating, Mr. Brown, that
19   this trial will take?
20            MR. BROWN:  Your Honor, we're still working out
21   the exact witness list.  But we would anticipate slightly
22   over one week of government presentation.  So maybe five to
23   six days --
24            THE COURT:  One to two weeks?
25            MR. BROWN:  Yes, Your Honor.

1           We also would want to flag to the Court that we do
2   anticipate a fair number of civilian witnesses who would be
3   called; so having them planned out a little bit would be
4   helpful.
5           THE COURT:  Okay.  Well, let me just warn you,
6   Mr. Brown, I have so many trials backed up I am going to be
7   double-booking trials; meaning, that you may go the day of
8   the trial or you may go some day after that, depending on
9   whatever other trial I have to get scheduled first, so -- or
10  is ready to go, and so on.  So I am just telling you this is
11  going to feel a little bit more like state court these days
12  given the number of trials we all have.
13          A lot of the January 6 trials are fairly short.
14  If you are double-booked, and a J6 trial goes before you,
15  you will probably go the end of that week or the following
16  week than the trial date.  But I am just alerting -- I am
17  just alerting lawyers about reality right now in the court,
18  and my own trial schedule.
19          MR. BROWN:  Understood.  Thank you, Your Honor.
20          Given that, should we -- in proposing dates for
21  trial, I was wondering, like, should we try to avoid dates
22  that the Court has already booked --
23          THE COURT:  No.  I want to hear what the parties
24  want --
25          MR. BROWN:  Understood, Your Honor.

1       THE COURT:  -- then I will try and fit you in.
2               In terms of pretrial motions, how many pretrial
3       motions or what pretrial motions are you considering,
4       Mr. Smock?
5               And will there be any -- let me put it to you
6       another way:  Will there be a need for an evidentiary
7       hearing, or are there going to be motions that raise only
8       legal issues?
9               MR. SMOCK:  At this point, I'm still relatively
10      new to the case, so I'm still evaluating that.  But, at this
11      point, I am guessing there would probably be a motion to
12      suppress with respect to two search warrants; possibly a
13      motion to suppress statements.
14              I am still researching issues with respect to
15      dismissal of counts; I am not sure about that at this point.
16      But I think it's unlikely there would be an evidentiary
17      hearing necessary but certainly would notify the Court
18      likely at the time of filing the motion, if not before,
19      about whether or not I think that would be necessary.
20              THE COURT:  Okay.  All right.  Well, thank you.
21              You have until 2 p.m. on Monday, when you're
22      figuring out the schedule and what you are going to propose,
23      to let me know whether there is going to be a date needed
24      for an evidentiary hearing depending on the pretrial motions
25      you are going to file.

1            All right.  I am going to set a status conference
2     date as a control date for speedy trial exclusion purposes;
3     I will set that for August 12th at 9:30.
4            And once I have your -- once I set a trial date, I
5     would presume your joint status report submitting the trial
6     date will also reflect the defendant's position on exclusion
7     of time under the Speedy Trial Act until the date of trial.
8            But, Mr. Smock, do you have any objection to
9     excluding time under the Speedy Trial Act between today and
10    9:30 on August 12th, which is the control date for the next
11    status conference?
12           MR. SMOCK:  No, Your Honor.  I do not.
13           THE COURT:  All right.  I will exclude time under
14    the Speedy Trial Act between today and August 12th.  I find
15    that it is in the interest of justice to do so, and that
16    those interests outweigh the interests of the defendant and
17    the public in a speedier trial in order to give the parties
18    an opportunity to confer on proposed trial dates, pretrial
19    motions, and motion schedule.
20           Mr. Brown, is that sufficient for Speedy Trial Act
21    exclusion findings?
22           MR. BROWN:  Yes, Your Honor.  Thank you.
23           THE COURT:  All right.  Is there --
24           MR. SMOCK:  Your Honor, just --
25           THE COURT:  Yes, Mr. Smock.

1                    MR. SMOCK:  One quick thing.
2                    I'm thinking I am understanding you to say that
3        once we submit this proposed schedule that August 12th date
4        will come off; am I right?
5                    THE COURT:  Yes.  I will vacate it.
6                    MR. SMOCK:  Okay.  That's fine.
7                    THE COURT:  Right.
8                    Mr. Brown, you looked like you wanted to say
9        something.
10                   MR. BROWN:  I'm sorry.  One other item of
11       business.  If we could briefly just, for the record, state
12       the plea offer -- put in the record the plea offer that was
13       extended and not accepted.
14                   THE COURT:  Do you want to do the *Missouri v Frye*
15       colloquy right now, Mr. Brown?
16                   MR. BROWN:  We can do it now or later on in the
17       case, but we are prepared to make a brief record.
18                   THE COURT:  Okay.  Frankly, I am a little curious.
19                   I will hear it now, although that will not relieve
20       you of your obligation to lay it all out in the joint
21       pretrial statement.
22                   But, yes, I mean, could you describe what
23       penalties Mr. Harmon is facing under the plea offer, which I
24       presume has been rejected, versus the penalty and
25       incarceration time he is facing if convicted at trial on all

1       charges.

2                   MR. BROWN:  Yes, Your Honor.

3                   The government extended two plea offers via

4       informal plea letter; the first one was extended on

5       January 19th, 2022.

6                   After discussions with Mr. Harmon's defense

7       counsel at that time, Ms. Shroff, we extended a second plea

8       offer that was slightly revised on March 18th, 2022.  Under

9       the terms of that plea offer, Mr. Harmon would have pled

10      guilty to one count of wire fraud in a superseding

11      information and one count of obstruction of an official

12      proceeding, in violation of 18 U.S.C. Section 1512(c)(2).

13      The guidelines calculation under that offer would have

14      worked out to offense level 24, including credit for

15      acceptance of responsibility.

16                  There was also a term in that plea offer that

17      allowed the parties to, quote-unquote, agree to disagree

18      about the applicability of the specific offense

19      characteristic, sophisticated means; so, under the defense

20      calculation, it would have been an offense level 22.

21                  Under the offense level 24, the government's

22      calculation of Mr. Harmon's potential exposure would be --

23      or the recommended guidelines sentence would have been 51 to

24      63 months in prison.  That plea offer also included a term

25      that would have required Mr. Harmon to cooperate and recover

1    any funds at issue in this proceeding.
2             That, compared -- that plea offer -- the
3    March 18th plea offer was held open after Mr. Smock came
4    into the case; we conducted a reverse proffer, engaged in
5    further discussions.  And the government ultimately asked
6    for a deadline of this week, July 5th, for the defendant to
7    make a decision on the plea offer; and that plea was not
8    accepted.
9             The government's calculation of the guidelines
10   applicable in this case after conviction at trial would
11   include the money laundering counts, with the prevailing
12   guideline of 2S1.1, which would work out to an offense level
13   of 36, which works out to 188 to 235 months --
14            THE COURT:  I'm sorry.  188 months, at the low end
15   of the guidelines?
16            MR. BROWN:  Yes, Your Honor.
17            Offense level 36, 188 to 235 months of
18   imprisonment; that's the recommended guidelines range.
19            I'd just note, for the record, that Mr. Harmon
20   had -- has reviewed this plea offer with two different
21   defense counsels, with Ms. Shroff and then, again, with
22   Mr. Smock.
23            THE COURT:  And the second -- all right.
24            And has -- there's been no plea offer extended to
25   Mr. Harmon without the requirement of cooperation?

1         MR. BROWN:  No, Your Honor.  No.
2              And the government does remain hopeful that we can
3    continue discussing potential resolution of this case short
4    of trial; but the plea offer that was extended and rejected
5    represents the most favorable plea that the government is
6    prepared to extend in this case.
7              THE COURT:  All right.  Okay.
8              And, Mr. Harmon, having heard that review of the
9    plea offer that was extended to you, and the government's
10   estimate of the applicable guideline range to which you
11   would be subject under that plea offer compared to the
12   estimated guideline range to which you may be subject if
13   convicted at trial on all charges pending against you, did
14   you reject that plea offer?
15             THE DEFENDANT:  I did, Your Honor.  Yes.
16             THE COURT:  All right.  And you did so after
17   consultation with your counsel?
18             THE DEFENDANT:  Correct.  Yes, Your Honor.
19             THE COURT:  All right.  Thank you.
20             All right.  With that, anything further,
21   Mr. Brown?
22             MR. BROWN:  No.  Thank you, Your Honor.
23             THE COURT:  And anything further, Mr. Smock?
24             MR. SMOCK:  No.  Thank you, Your Honor.
25             THE COURT:  Okay.  You are all excused.
          (Whereupon, the proceeding concludes, 9:50 a.m.)

**CERTIFICATE**

     I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

     This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.

     Dated this 22nd day of July, 2022

/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter