UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Criminal No. 21-cr-433 (BAH) |
| | : | |
| v. | : | Offenses: |
| | : | |
| **GARY JAMES HARMON,** | : | 18 U.S.C. § 1343 |
| | : | (Wire Fraud) |
| Defendant. | : | |
| | : | 18 U.S.C. § 1512(c)(2) |
| | : | (Obstruction of an Official Proceeding) |
| | : | |
| | : | Forfeiture: 18 U.S.C. § 981(a)(1)(C); |
| | : | 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c) |

## INFORMATION

The United States Attorney charges that:

At all times relevant to this Information:

### COUNT ONE
### (Wire Fraud)

### Introduction

1.      Defendant GARY JAMES HARMON ("GARY HARMON") was a resident of the Northern District of Ohio.

2.      LARRY DEAN HARMON ("LARRY HARMON") was GARY HARMON's brother and a resident of the Northern District of Ohio.

3.      Bitcoin ("BTC") was a decentralized virtual currency.  All bitcoin transactions were posted to a public ledger, called the blockchain.  Although transactions were visible on the public ledger, each transaction was only listed by a series of letters and numbers that did not identify the individuals involved in the transaction.

4.      On December 3, 2019, a federal grand jury in the District of Columbia returned a sealed indictment (the "Indictment") against LARRY HARMON on counts of Conspiracy To Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a); and Money Transmission Without a License, in violation of D.C. Code § 26-1023(c).

5.      The charges in the Indictment arose from LARRY HARMON's role as administrator of a darknet money transmitting and money laundering business named HELIX. HELIX enabled customers, for a fee, to send bitcoins to designated recipients in a manner which was designed to conceal and obfuscate the source or owner of the bitcoins. This type of service was commonly referred to as a bitcoin "mixer" or "tumbler." HELIX charged a fee of approximately 2.5 percent per transaction.

6.      In total, HELIX exchanged at least approximately 354,468 bitcoins—the equivalent of approximately $311 million in U.S. dollars at the time of the transactions—on behalf of its customers, including customers in the District of Columbia. The largest volume of funds sent to HELIX came from darknet markets selling illegal goods and services, including AlphaBay, Agora Market, Nucleus, and Dream Market.

7.      Through blockchain analysis, law enforcement identified 16 bitcoin wallets (hereinafter the "SUBJECT WALLETS," and numbered "SUBJECT WALLET 1" through "SUBJECT WALLET 16") which contained a total of approximately 4,877 BTC traced to HELIX. The SUBJECT WALLETS represented the proceeds and fees LARRY HARMON generated through the operation of HELIX.

8. Pursuant to the Forfeiture Allegation in the Indictment, the BTC held in the 16 SUBJECT WALLETS were subject to criminal forfeiture as property "involved in" LARRY HARMON's money laundering and unlicensed money transmitting business offenses.

9. On February 6, 2020, federal agents arrested LARRY HARMON in Akron, Ohio and executed search warrants issued in the Northern District of Ohio at three properties owned or leased by LARRY HARMON.

10. Several cryptocurrency storage devices were seized pursuant to the searches. The devices included a Trezor cryptocurrency storage device (hereinafter "TREZOR ONE").

11. Immediately following LARRY HARMON's arrest, law enforcement was unable to recover any cryptocurrency from TREZOR ONE. TREZOR ONE actually held the 16 SUBJECT WALLETS containing proceeds and fees LARRY HARMON generated through the operation of HELIX, but the SUBJECT WALLETS were concealed within hidden wallets and were not visible to law enforcement.

12. Federal agents transported TREZOR ONE to a secure evidence locker in Washington, D.C.

13. In or about April 2020, GARY HARMON used LARRY HARMON's credentials to recreate eight of the SUBJECT WALLETS that law enforcement had previously identified as containing the proceeds and fees LARRY HARMON generated through the operation of HELIX, namely, SUBJECT WALLET 1 through SUBJECT WALLET 8.

14. Between on or about April 19, 2020, and on or about April 24, 2020, GARY HARMON transferred the contents of SUBJECT WALLET 1 through SUBJECT WALLET 8 into new, previously unknown bitcoin wallets. Those transactions were visible to the government on the public blockchain.

15. Beginning in or about August 2020, GARY HARMON laundered bitcoins from the SUBJECT WALLETS through two online bitcoin mixer services. GARY HARMON subsequently used the laundered bitcoins to finance large purchases and other expenditures.

### The Scheme

16. From in or about April 2020 through at least in or about August 2020, in the District of Columbia and elsewhere, GARY HARMON devised and intended to devise a scheme to defraud and to obtain money and property from 16 bitcoin wallets containing proceeds and fees LARRY HARMON generated through the operation of HELIX, and which were subject to forfeiture in the prosecution and criminal forfeiture proceeding in *United States v. Larry Dean Harmon*, Criminal Number 19-CR-395, in the United States District Court for the District of Columbia, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme To Defraud

17. It was the purpose of the scheme to defraud for the defendant, GARY HARMON, to unlawfully enrich himself by obtaining the bitcoin stored in SUBJECT WALLET 1 through SUBJECT WALLET 8 and spending the funds on himself and his associates—funds that GARY HARMON was aware had been lawfully seized by the government and were subject to a pending forfeiture proceeding.

### Manner and Means

18. The manner and means by which this purpose was carried out included the following:

    a. GARY HARMON used LARRY HARMON's credentials to recreate SUBJECT WALLET 1 through SUBJECT WALLET 8, containing the

proceeds and fees LARRY HARMON generated through the operation of HELIX.

b. Under the false and fraudulent pretense that he was lawfully authorized to do so, GARY HARMON transferred the contents of SUBJECT WALLET 1 through SUBJECT WALLET 8 into new bitcoin wallets which were inaccessible to law enforcement, which he had created for the purpose of executing the scheme.

c. GARY HARMON concealed the proceeds of the scheme by laundering bitcoins from the SUBJECT WALLETS through two online bitcoin mixer services.

d. GARY HARMON falsely denied moving the missing 712.6003 BTC during a voluntary interview with law enforcement agents, and he further told agents that he received a USB storage device containing partial recovery seed phrases from LARRY HARMON and he destroyed it by flushing it down a toilet.

### Execution of the Scheme

19. On or about April 19, 2020, in the District of Columbia and elsewhere, the defendant, GARY HARMON, for the purpose of executing and attempting to execute the above-described scheme to defraud, did cause to be transmitted by means of wire communication in interstate commerce writings, signs, and signals from the District of Ohio when he initiated a transfer of approximately 2.999981 BTC contained in SUBJECT WALLET 7, constituting proceeds and fees LARRY HARMON generated through the operation of HELIX and which was subject to forfeiture in the prosecution and criminal forfeiture proceeding in *United States v. Larry Dean Harmon*, Criminal Number 19-CR-395, in the United States District Court for the District

of Columbia, into a new bitcoin wallet within GARY HARMON's possession, custody, and control.

**(Wire Fraud, in violation of
Title 18, United States Code, Section 1343)**

## COUNT TWO
**(Obstruction of an Official Proceeding)**

20. Paragraphs 1 through 19 are re-alleged and incorporated herein.

21. From on or about April 19, 2020 through on or about April 24, 2020, in the District of Columbia and elsewhere, GARY HARMON did corruptly obstruct, influence, and impede, and did attempt to corruptly obstruct, influence, and impede, an official proceeding, to wit, the criminal prosecution and criminal forfeiture proceeding in *United States v. Larry Dean Harmon*, Criminal Number 19-CR-395, in the United States District Court for the District of Columbia, by obtaining and removing approximately 712.6003 BTC that was stored on the TREZOR ONE and which was subject to forfeiture in *United States v. Larry Dean Harmon*.

**(Obstruction of an Official Proceeding, in violation of
Title 18, United States Code, Section 1512(c)(2))**

## FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Counts One and Two, the defendant shall forfeit to the United States any property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One and Two, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment for a sum of money

equal to the value of all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One and Two.

    2.    The United States will also seek forfeiture of the following specific property upon conviction of the offenses alleged in Counts One and Two:

    a.    The real property located at 3705 Clinton Ave Unit 5, Cleveland, Ohio 44113, more particularly described as Situated in the City of Cleveland, County of Cuyahoga and State of Ohio: And Known as being Unit 5 in The Nikolai, a Residential Condominium Development of part of Original Brooklyn Township Lot No. 51, as shown by the plat recorded as Instrument No. 202104120417 of Cuyahoga County Records, and further described by the Declaration of Condominium Ownership and By-Laws as recorded in Instrument No. 202104120416 of Cuyahoga County Records, as may be amended from time to time, be the same more or less, but subject to all legal highways;

    b.    One 2018 Audi S5 automobile with VIN WAUB4CF5XJA034330;

    c.    $284,879.88 seized from Huntington National Bank account nos. 03598804579 and 02593237029, in the name of Gary Harmon;

    d.    Approximately 68.42 in Bitcoin (BTC) (after required fees) seized from BlockFi account act_fiTKqjuo5DvzbyFdxAkRcbki, in the name of Gary Harmon;

    e.    One Chronoswiss Bitcoin watch seized from 3705 Clinton Ave Unit 5, Cleveland, Ohio 44113;

    f.    Approximately 161.60735183 in Bitcoin (BTC) (after required fees) seized from wallets reconstituted using seed words;

    g.    Approximately 17,404,400.64428636 in Dogecoin (DOGE) (after required fees) seized from wallets reconstituted using seed words;

    h.    Approximately 2.141987205 in Ethereum (ETH) (after required fees) seized from wallets reconstituted using seed words; and

    i.    Approximately 417.3903 in Bitcoin (BTC) (after required fees) seized from wallets recovered from an iPhone recovered from 3705 Clinton Ave Unit 5, Cleveland, Ohio 44113.

    4.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c))**

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime and Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov