```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-433
vs.                                )
                                   )  2:12 p.m.
GARY JAMES HARMON,                 )  December 22, 2022
            Defendant.             )  Washington, D.C.
                                   )
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## TRANSCRIPT OF PLEA COLLOQUY
### BEFORE THE HONORABLE BERYL A. HOWELL,
### UNITED STATES DISTRICT COURT CHIEF JUDGE

**APPEARANCES:**

```
FOR THE UNITED STATES:
                    CHRISTOPHER B. BROWN
                    C. ALDEN PELKER
                    DOJ-U.S. Attorney's Office
                    For the District of Columbia
                    601 D Street, NW
                    Washington, DC 20530
                    (202) 252-7153
                    Email: christopher.brown6@usdoj.gov


FOR THE DEFENDANT:
                    EDWARD SMOCK
                    Office of the Federal Public Defender
                    District of Columbia
                    625 Indiana Avenue, NW
                    Washington, DC 20004
                    (202) 208-7500
                    Email: ned_smock@fd.org


Court Reporter:     Elizabeth SaintLoth, RPR, FCRR
                    Official Court Reporter


              Proceedings reported by machine shorthand.
          Transcript produced by computer-aided transcription.
```

1                      **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  Matter before the Court,

3       Criminal Case No. 21-433, United States of America versus

4       Gary James Harmon.

5              Counsel, please come forward and state your names

6       for the record, starting with the government.

7              MR. BROWN:  Good afternoon, Chief Judge Howell.

8       AUSA Christopher Brown for the government.

9              THE COURT:  Yes.  Good afternoon, Mr. Brown.

10             MS. PELKER:  Good afternoon, Your Honor.

11      Alden Pelker for the United States.

12             THE COURT:  Yes good.  Afternoon.

13             MR. SMOCK:  Good afternoon, Your Honor.

14      Ned Smock for Mr. Harmon.

15             THE COURT:  I can't hear you.

16             MR. SMOCK:  I am happy to take off my mask.

17             THE COURT:  Yes.

18             MR. SMOCK:  Ned Smock for Mr. Harmon.

19             THE COURT:  Yes.  Good afternoon, Mr. Smock.

20             Good afternoon, Mr. Harmon.

21             THE DEFENDANT:  Good afternoon, Your Honor.

22             THE COURT:  Okay.  So I understand that the

23      purpose of Mr. Harmon's appearance in court today is to

24      enter a plea of guilty to two charges, and a superseding

25      information that's now docketed at ECF 41.

1              Count 1 charging a wire fraud and -- let's see --

2     Count 2 charging obstruction of an official proceeding.

3              Mr. Smock, is that correct?

4              MR. SMOCK:  That is correct, Your Honor.

5              THE COURT:  All right.  So, Mr. Harmon, we're just

6     going to do this with everybody sitting separately given the

7     ongoing transmission of COVID.

8              Usually, Mr. Harmon, people stand at the podium;

9     but I am just having you sit in a relaxed state in your

10    chair speaking into the microphone.

11             During the course of this plea hearing, I am going

12    to have to ask you a whole series of questions because I

13    have to assure myself, before I accept your plea of guilty,

14    that you understand everything that's going on here today;

15    you are competent to answer questions; and you understand

16    the rights you would be giving up; the penalties you face;

17    you understand the charges and the terms of the plea

18    agreement you have with the government.

19             I am going to be asking you a whole series of

20    questions.  If I ask you a question that you want me to

21    repeat before you answer, don't hesitate to let me know.

22    Just say:  Judge, can you repeat that question?  I will

23    repeat it.

24             Do you understand?

25             THE DEFENDANT:  Yes.

```
 1              THE COURT:  If there are some questions I ask you
 2      that you want to talk to your lawyer about before you
 3      answer; again, don't hesitate to let me know that you would
 4      like a minute or two, or a few minutes to talk to your
 5      lawyer before you answer.
 6              Do you understand?
 7              THE DEFENDANT:  Yes, I do.
 8              THE COURT:  Before we proceed any further, I would
 9      ask Ms. Gumiel, my courtroom deputy, to administer the oath
10      to you, Mr. Harmon.  So please raise your right hand.
11              (GARY JAMES HARMON, Defendant, sworn.)
12              THE COURT:  So, Mr. Harmon, you are now under
13      oath.  This means that if you do not answer my questions
14      truthfully, any false statement that you make could end up
15      in your prosecution for making a false statement or
16      prosecution for perjury, and any false answers you give to
17      me here today could be used against you in that prosecution.
18              Do you understand?
19              THE DEFENDANT:  Yes, I do.
20              THE COURT:  What is your full name, Mr. Harmon?
21              THE DEFENDANT:  Gary James Harmon.
22              THE COURT:  And how old are you?
23              THE DEFENDANT:  31.
24              THE COURT:  How far did you go to school -- how
25      far did you go in school?
```

```
1              THE DEFENDANT:  I attended college, but I did not
2      graduate.
3              THE COURT:  Okay.  How many years of college?
4              THE DEFENDANT:  Three and a half.
5              THE COURT:  And what were you majoring in?
6              THE DEFENDANT:  Exercise science.
7              THE COURT:  Exercise science?
8              THE DEFENDANT:  Yes.
9              THE COURT:  That's interesting.
10             Do you have any difficulty reading or writing?
11             THE DEFENDANT:  No.  I am not the greatest at it,
12     but I can.
13             THE COURT:  Where were you born, Mr. Harmon?
14             THE DEFENDANT:  Akron, Ohio.
15             THE COURT:  If you are not a U.S. citizen, do you
16     understand that conviction of this offense may result in
17     your deportation, exclusion from the United States, or
18     denial of citizenship under our immigration laws?
19             THE DEFENDANT:  Yes.
20             THE COURT:  Have you taken any alcohol or drugs in
21     the last 48 hours or any medicine that could affect your
22     ability to understand what you are doing here today?
23             THE DEFENDANT:  No.
24             THE COURT:  Have you received any treatment
25     recently for any type of mental illness or emotional
```

1     disturbance or addiction to narcotic drugs of any kind?

2               THE DEFENDANT:  No.

3               THE COURT:  Are you completely satisfied with the

4     services of your attorney in this case?

5               THE DEFENDANT:  Yes, I am.

6               THE COURT:  Do you feel that you have had enough

7     time to talk to your attorney about the case, the evidence

8     in the case, the plea offer, and whether or not you should

9     accept it?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Does the government have any question

12    about Mr. Harmon's competency to enter a plea today?

13              THE DEFENDANT:  No, Your Honor.

14              THE COURT:  Mr. Smock, do you have any question

15    about his competency to enter a plea today?

16              THE DEFENDANT:  No, Your Honor.

17              THE COURT:  So Mr. Harmon appears to be responding

18    appropriately to my questions and seems to understand fully

19    what is going on, so I will proceed with the remaining

20    questions in the plea hearing.

21              Now, the government has filed a new written charge

22    against you that, as I said, is docketed at ECF 41 in a

23    document called an "Information."

24              Have you reviewed the information with your

25    lawyer?

1        THE DEFENDANT:  Yes, I have.

2        THE COURT:  And do you understand the charges in

3   this information?

4        THE DEFENDANT:  Yes, I do.

5        THE COURT:  All right.  So the next part of this

6   hearing, Mr. Harmon, is where I describe to you the

7   constitutional rights that you hold.  Some of these

8   questions may sound a bit legalistic, so let me know if you

9   want to talk to Mr. Smock or you want me to repeat a

10  question before you answer.

11       Do you understand?

12       THE DEFENDANT:  Okay.

13       THE COURT:  I didn't hear you.

14       THE DEFENDANT:  Sorry.  Yes.  Okay.

15       THE COURT:  Okay.  Now, you have a right to a

16  grand jury indictment.  In other words, the government must

17  convince 12 grand jurors, out of at least 16, that there is

18  probable cause that the crimes -- the two crimes charged in

19  the information against you -- were committed and were

20  committed by you.

21       Do you understand that you have a right to have a

22  grand jury consider these charges?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Do you give up the right to have a

25  grand jury indictment of these charges?

1           THE DEFENDANT:  Yes.

2           THE COURT:  I see that there is the form that I

3     will sign shortly.

4           You also have a right to plead not guilty and to

5     have a jury trial in this case.  And if you had a jury

6     trial, 12 citizens from the District of Columbia would sit

7     in the jury box to my left, listen to the evidence presented

8     by the government, and decide whether or not that -- based

9     on that evidence -- you are guilty as charged.

10          Do you understand that you have a right to plead

11    not guilty and to have a jury trial on the charges against

12    you?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  In fact, I think we have a trial date

15    in your case; and so we could just proceed with that trial

16    date.

17          Do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  If you had a trial, you would have a

20    right to be represented by your lawyer at that trial and at

21    every other stage of the proceeding and, if necessary, have

22    the Court appoint counsel for you.

23          Do you understand that?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  If you had a trial, you would have the

1    right, through your lawyer, to confront -- meaning

2    cross-examine -- any witnesses called against you.

3               Do you understand that?

4               THE DEFENDANT:  Yes, I do.

5               THE COURT:  If you had a trial, you would have the

6    right to present your own witnesses and the right to

7    subpoena -- meaning to compel -- witnesses to come to

8    court to testify in your defense.

9               Do you understand that you would also have the

10   right to testify and present evidence on your own behalf if

11   you wanted to?

12              Do you understand all of that?

13              THE DEFENDANT:  Yes, I do.

14              THE COURT:  You would not have to testify or

15   present any evidence at the trial if you did not want to

16   because you cannot be forced to incriminate yourself or

17   present evidence of your own guilt, and that cannot be used

18   against you.

19              Do you understand that?

20              THE DEFENDANT:  Yes, I do.

21              THE COURT:  You are presumed by the law to be

22   innocent.  And if you chose to go to trial, it would be the

23   government's burden alone to prove your guilt beyond a

24   reasonable doubt.

25              Do you understand that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  If you went to trial and were

3    convicted, you would have the right to appeal your

4    conviction of guilt to the Court of Appeals and to have your

5    lawyer help prepare your appeal.

6          Do you understand that?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  Your plea agreement sets out a waiver

9    of appeal rights, on page 8, at paragraph 9D.

10         And under the terms of the plea agreement, you're

11   agreeing to waive the right to appeal your conviction on the

12   basis that the statutes to which you are pleading guilty are

13   unconstitutional and that your admitted conduct does not

14   fall within the scope of the statutes.

15         You are also agreeing to waive the right to appeal

16   the sentence in this case, except to the extent the Court

17   sentences you above the statutory maximum or guidelines

18   range determined by the Court, all of which is set out

19   verbatim in the plea agreement under paragraph 9D.

20         Do you understand all of that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  Do you also understand that you waive

23   any right to challenge the conviction entered or sentence

24   imposed under this agreement or otherwise attempt to modify

25   or change the sentence or the manner in which it was

1   determined, and any collateral attack including but not

2   limited to a motion brought under 28 U.S.C. Section 2255 or

3   Federal Rule of Criminal Procedure 60(b), except to the

4   extent such a motion is based on newly-discovered evidence

5   or on a claim you received ineffective assistance of

6   counsel, all of which is set out verbatim, at paragraph 9E

7   on page 8?

8                 Do you understand all of that?

9                 THE DEFENDANT:  Yes, I do.

10                THE COURT:  Now, the offense to which you are

11  pleading guilty is a felony offense.

12                If I accept your guilty plea and find you guilty

13  of that offense, that may deprive you not just of the

14  constitutional rights I have reviewed with you, but also

15  valuable civil rights.

16                Those civil rights include:  The right to vote,

17  the right to hold public office, the right to serve on a

18  jury, and the right to possess a firearm.

19                Do you understand that?

20                THE DEFENDANT:  Yes, I do.

21                THE COURT:  Do you understand that, by entering a

22  plea of guilty and being convicted of this felony offense,

23  you may also face enhanced or increased punishment if you

24  are convicted of another crime in the future?

25                THE DEFENDANT:  Yes, I do.

1          THE COURT:  Now, the government has provided a

2     document called "Statement of Offense" and related conduct

3     that describes what the government would be prepared to

4     prove at trial about your criminal conduct.

5          Have you read this document and discussed it fully

6     with your lawyer?

7          THE DEFENDANT:  Yes, I have.

8          THE COURT:  And I am looking on page 11, under

9     defendant's acceptance, that indicates that this is a

10    statement that you voluntarily agree to, and that you have

11    carefully reviewed every part of it.

12         So, for the record, I am holding up page 11.  The

13    signature page that has a signature above the name Gary

14    James Harmon, Defendant, signed on December 6, 2022.

15         I am showing that to you.  Is that your signature,

16    Mr. Harmon?

17         THE DEFENDANT:  Yes, it is, Your Honor.

18         THE COURT:  And does this statement of offense

19    fairly and accurately describe what you did in this case?

20         THE DEFENDANT:  Yes, it does.

21         THE COURT:  And from approximately 2020 to

22    April 13, 2020 -- February 2020 to April 13, 2020, were you

23    employed at Helix, the company owned and operated by your

24    brother Larry Harmon?

25         THE DEFENDANT:  I'm sorry.  Can you repeat --

1          THE COURT:  Did I get the dates wrong?

2          MR. BROWN:  Excuse me, Your Honor.  If I may?

3          THE COURT:  2020 through at least August of 2020.

4    I'm sorry, February -- from on or about April 2020 through

5    August 2020.  Is that right?

6          MR. BROWN:  Your Honor, if I may.

7          I think the Court is referring to paragraph 4 of

8    the statement of offense.  I think maybe what is throwing

9    everyone off is the Court may have referred to the word

10   "Helix," somewhere in there; and that was not the name of

11   the company at which --

12         THE COURT:  I see.

13         MR. BROWN:  -- Mr. Gary Harmon was employed.

14         The company was, I believe, Coin Ninja, which was

15   a different company.

16         THE COURT:  I see.  Okay.  That was a different

17   company from Helix.  I see.  Okay.

18         So from about April 2020 through at least about

19   August 2020, in the District of Columbia and elsewhere, is

20   that when you were involved in the scheme to defraud or

21   obtain money and property from 16 bitcoin wallets containing

22   proceeds and fees that your brother Larry Harmon generated

23   through the operation of Helix and that were subject to

24   forfeiture?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Were you aware of the indictment and

2     the charges brought by the government against your brother

3     Larry?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Did you, in fact, attend some of your

6     brother's hearings in February 2020 and March 2020?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Based on your presence at those

9     hearings, did you understand that law enforcement had seized

10    Trezor cryptocurrency storage devices from your brother's

11    possession and were unable to access the contents?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Did you also understand the government

14    had not been able to secure the contents of those seized

15    Trezor devices?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And in April 2020, did you use your

18    brother's -- Larry Harmon -- credentials to recreate eight

19    subject wallets that law enforcement previously identified

20    as containing the proceeds and fees that your brother

21    generated through the operation of Helix?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And between approximately April 19,

24    2020 and April 24, 2020, did you transfer the contents of

25    Subject Wallet 1 through Subject Wallet 8 into new,

1   previously unknown bitcoin wallets, by means of wire

2   communications in interstate commerce writings, signs, and

3   signals from the district of Ohio?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And in that operation, did you

6   transfer, approximately, 712.6003 bitcoin with an

7   approximate value of $4,881,532.40?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  When you made the transfers, did you

10  do so under the false and fraudulent pretense that you were

11  lawfully authorized to make such transfers when you, in

12  fact, had no claim to the contents of the subject wallets?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And did you know that the funds in

15  those subject wallets had been lawfully seized by the

16  government and were subject to a pending forfeiture

17  proceeding?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And beginning in, approximately,

20  August 2020, did you launder bitcoins through the subject

21  wallets through two online bitcoin mixer services?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Did you later use those laundered

24  bitcoins to finance large purchases and other expenditures?

25         THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  Was your conduct that I've just

2    described, in all respects, knowing, intentional, and

3    willful, reflecting an intention and deliberation to do

4    something the law forbids that was not, in any way, the

5    product of an accident, mistake of law or fact, duress,

6    entrapment, or public authority?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  All right.  Mr. Brown, could you

9    please state the elements of each of the charges of wire

10    fraud and obstruction of an official proceeding?

11        MR. BROWN:  Yes, Your Honor.

12        The essential elements of the offense of wire

13    fraud, in violation of Title 18, United States Code Section

14    1343 are:

15        One, that the defendant knowingly and willingly

16    devised or intended to devise a scheme to defraud; and two,

17    that the scheme to defraud employed materially false or

18    fraudulent pretenses, representations, or promises; three,

19    that the defendant transmitted or caused to be transmitted

20    by way of wire communications in interstate commerce any

21    writing, sign, or signal, in furtherance of executing such

22    scheme; and four, that the defendant acted with a specific

23    intent to defraud.

24        And then, the essential elements of obstruction of

25    an official proceeding, in violation of 18 U.S.C. Section

1   1512(c)(2) are:  One, that the defendant obstructed,

2   influenced, or impeded any official proceeding; and two,

3   that the defendant acted corruptly.

4           THE COURT:  Mr. Smock, do you agree that those are

5   the elements of both offenses?

6           MR. SMOCK:  Yes, Your Honor.

7           THE COURT:  Mr. Harmon, do you have any questions

8   about the charges against you, or do you fully understand

9   them?

10          THE DEFENDANT:  I fully understand, Your Honor.

11  Thank you.

12          THE COURT:  And, Mr. Brown, I see that the plea

13  agreement between the parties dated December 2nd, 2022, has

14  been agreed to by all of the parties, of course.

15          Does this plea agreement reflect the most lenient

16  plea offer made to Mr. Harmon in this case?

17          MR. BROWN:  Yes, Your Honor.

18          THE COURT:  Mr. Smock, could you just briefly

19  summarize the main terms of the plea agreement.

20          MR. SMOCK:  Yes, Your Honor.

21          Mr. Harmon is pleading guilty, as we have

22  discussed, to two charges --

23          THE COURT:  You have to speak up.

24          MR. SMOCK:  -- wire fraud and obstruction of an

25  official proceeding.  We have agreed to the factual

1      stipulations that were just summarized in court.

2              The government has agreed not to file additional

3      charges based on the conduct listed in the statement of

4      offense.  There is an agreement with respect to guidelines

5      calculations for each offense, with one disputed issue which

6      is with respect to U.S. Sentencing Guidelines 2B1.1(b)(10);

7      that is, as to whether or not sophisticated means were

8      involved.  That's an issue that we intend to argue to the

9      Court at the sentencing hearing.

10             There is an agreement that, in light of the fact

11     that Mr. Harmon is accepting responsibility, there would be

12     a two-level reduction, with the government moving for an

13     additional one level at the time of sentencing, for a total

14     of three.

15             We have an agreement as to the estimated

16     guidelines range set forth in the plea agreement.  And there

17     is an understanding that the ultimate sentencing decision is

18     up to the Court.  Those are the main --

19             THE COURT:  And then, there is also a fairly

20     significant forfeiture provision?

21             MR. SMOCK:  That is correct.  There is a list of

22     items that we have agreed to forfeit.

23             THE COURT:  Okay.  Including a money judgment in

24     the amount of $4,881,432.40, as well as 9 items enumerated

25     in the plea agreement on page 9.

1          MR. SMOCK:  And I can tell the Court that there

2     has been an arrangement by which a significant portion of

3     the bitcoin had been returned to the United States; the

4     value of that bitcoin, actually, at this point, exceeds that

5     forfeiture amount.

6          THE COURT:  Exceeds?

7          MR. SMOCK:  Exceeds.

8          THE COURT:  So bitcoin is one cryptocurrency that

9     hasn't collapsed and has only increased in value?

10          MR. SMOCK:  As of this offense, Your Honor.

11          THE COURT:  I don't follow it.  I was curious

12     whether it was going to be worth anything anymore.

13          But it has increased in value?

14          MR. SMOCK:  Since the time of this offense, yes.

15          THE COURT:  Interesting, okay.

16          MR. SMOCK:  So those are the essential terms.

17          THE COURT:  All right.  Mr. Harmon, do you have

18     any questions about the plea agreement?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  And you understand that if your

21     sentence is more severe than you expected, you will still be

22     bound by your plea and will have no right to withdraw it?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  So if I accept your guilty

25     plea in this case, the statutes to which you are entering a

1    plea of guilty sets the penalties you can receive; on the

2    wire fraud count is a maximum sentence of 20 years'

3    imprisonment; on the obstruction of an official proceeding

4    count, under 18 U.S.C. Section 1512(c)(2), you can get a

5    maximum sentence of 20 years' imprisonment as well.

6         And on both charges you would face a supervised

7    release term of not more than five years; a fine of

8    $250,000, or twice the pecuniary gain or loss from the

9    offense; a special assessment of $100 as to each charge,

10   which would amount to a total of $200; restitution, and an

11   obligation to pay any applicable interest or penalties in

12   the fines on the restitution not timely made.

13        Do you understand that those are the statutory

14   penalties that apply in your case?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  We have already mentioned the

17   forfeiture that you are agreeing to as part of your plea

18   agreement set out in paragraph 9.

19        And you understand that that is a very substantial

20   forfeiture provision?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  Now, in determining your sentence, I

23   am also obligated to calculate and consider the applicable

24   sentencing range that's recommended under the federal

25   guidelines manual for a person with your criminal history,

1    for your offense conduct.

2            I know that the parties dispute what one of the

3    specific offense characteristics is that might result in an

4    increase in severity of your sentencing range.

5            But there is one other issue with that guideline

6    determination I just wanted to query the parties about

7    because I know you-all are debating whether the specific

8    offense characteristic for use of sophisticated means, under

9    Section 2B1.1(b)(10) applies, which is an issue I will

10   decide at the time of sentencing; I am not going to decide

11   it now.

12           But I also wanted to ask about -- neither of the

13   parties addressed whether a two-level offense level would be

14   warranted in calculation of the wire fraud guideline, under

15   the guideline at Section 3C1.3.  And I don't like surprises

16   at the time of sentencing.

17           So I would like you-all to just be aware of

18   this because I want to make sure Mr. Harmon is aware of this

19   at the time of the plea; that Application Note 8, at

20   Guideline 3C1.3, directs that:  When, as here, a defendant

21   is convicted of both an obstruction offense and an

22   underlying offense, the offense with respect to which the

23   obstructive conduct occurred, and the two counts are grouped

24   together, and the offense level for that group of closely

25   related counts will be the offense level for the underlying

1    offense increased by the two-level adjustment specified by

2    this section, or the offense for the obstruction offense,

3    whichever is greater; which, if that application note is

4    applied here -- and I don't understand why it wouldn't be --

5    the total offense level would be increased by that two

6    offense levels under Section 3C1.3.

7            Did the government -- has the government

8    considered that?

9            And, Mr. Smock, have you considered that in the

10   guideline estimation?

11           It's not mentioned in the plea agreement, so I

12   puzzled over that.

13           MR. BROWN:  Your Honor, we can certainly go back

14   and review that.  It was not an issue that we looked in

15   detail at.

16           I think maybe in passing we might have thought

17   that because he is charged with an obstruction count that an

18   obstruction enhancement generally doesn't apply in those

19   situations.

20           THE COURT:  That is the general rule, which is why

21   people miss the last application note in 3C1.3 at their

22   peril.

23           MR. BROWN:  Yes, Your Honor.

24           THE COURT:  Because that directs:  When, as here,

25   the obstruction offense level is lower than for the

1   underlying offense, wire fraud, you calculate -- you add the

2   two offense levels for obstruction to the wire fraud;

3   because otherwise it would be as if the obstruction didn't

4   matter, I mean, because it's overcome by the higher offense

5   level for the wire fraud.

6          Anyway, people miss that application note; so I

7   just wanted to bring it to your attention.

8          Let me tell you, Mr. Harmon, what this means for

9   the guideline determination.

10          So based on what we know about your criminal

11   history, your Criminal History Category is 1 because you

12   have, I think, zero criminal history.

13          Counts 1 and 2, the wire fraud and obstruction

14   counts, are grouped together into a single group, under the

15   guideline at 3D1.2A, which applies the offense level for the

16   most serious of the counts in the group which, here, is

17   Count 1, the wire fraud count.

18          And the guidelines offense level for wire fraud,

19   in violation of 18 U.S.C. Section 1343 is determined, under

20   the guideline at Section 2B1.1(a)(1), and that provides a

21   base-offense level of 7.

22          And the government's position is that this

23   base-offense level is increased by various specific offense

24   characteristics, including 18 offense levels because your

25   conduct involved the loss of more than $3,000,500, under the

1    guideline at 2B1.1(b)(1)(J).

2            The government is also going to take the position

3    that an additional two offense levels apply because your

4    offense level involved the use of sophisticated means, under

5    the guideline at 2B1.1(b)(10); and that's where your counsel

6    has already alerted me that he's going to dispute that.

7            And then, both parties agree that your guideline

8    offense level would be decreased by three offense levels for

9    acceptance of responsibility, which would result in a total

10   offense level of 24, if the government prevails on the

11   sophisticated means issue which, in combination with a

12   Criminal History Category of 1, results in an advisory

13   guideline range of 51 to 63 months' imprisonment; and all of

14   that is laid out in your plea agreement.

15           If the guideline, at 3C1.3, Application Note 8,

16   also applies, that would add an additional two offense

17   levels to the 24, so that your offense level would be 26.

18           At a Criminal History Category of 1, that would

19   result in a recommended or an advisory sentencing range of

20   63 to 78 months, not the 51 to 63 months' imprisonment

21   estimated in the plea agreement.

22           So I wanted to bring that to your attention now.

23           Do you want to have a discussion with Mr. Smock

24   about that?

25           THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  Yes.  Please discuss that.

2           (Whereupon, counsel and defendant confer.)

3           MR. SMOCK:  May I confer with the government?

4           THE COURT:  Of course you may.

5           (Whereupon, counsel confer.)

6           THE COURT:  Do you want to borrow my guidelines

7    manual?

8           MR. SMOCK:  Your Honor, I actually have one.

9           MR. BROWN:  I almost always bring one.

10          THE COURT:  Good for you.

11          That's old school; you carry your book with you.

12          Do you-all think my reading of Application Note 8

13   to 3C1.3 is incorrect?

14          MS. PELKER:  No, Your Honor.

15          We're trying to determine whether we actually get

16   to that point depending on whether -- reading Application

17   Note 1, whether this is considered an obstruction of -- it's

18   not an obstruction of the wire fraud, but an obstruction --

19   whether the wire fraud would be considered the related --

20          THE COURT:  Because maybe it's not connected to

21   the underlying offense?

22          I thought it was all pretty interconnected.

23          Can I tell you something.  I think it's important

24   for Mr. Harmon to understand that this is another issue in

25   how the sentencing guidelines are going to apply to him.

1          He can decide whether he wants to proceed with the

2    plea understanding that, or not; that's sort of the

3    question.

4          Because, Mr. Harmon, the guidelines are not

5    mandatory on me, they're advisory.  And depending on what

6    the advisory guidelines are -- I can go below them, I can go

7    above them, depending on the arguments made by the parties,

8    the nature of your offense, your personal characteristics,

9    and so on.  It's advisory.

10          But I think it's important that it's not just the

11    two levels for sophisticated means that may increase the

12    advisory sentencing range that applies in your case, but

13    there is also this other issue.

14          So, Mr. Smock, do you want to proceed, or not?

15          MR. SMOCK:  I mean, I think I --

16          THE COURT:  It may not be something that we're

17    going to resolve here.

18          MR. SMOCK:  You are right.

19          THE COURT:  I haven't done case-law research on

20    this to see -- and neither have you-all.

21          MR. SMOCK:  I guess I am going to speak to my

22    client about this.

23          Just so you are not left in the dark about what I

24    am looking at -- the way that I'm looking at 3C1.1 and

25    looking at Application Note 1, it says:  This adjustment

1    applies if the defendant's obstructive conduct, A, occurred

2    with respect to the investigation prosecution or sentencing

3    of the defendant's instant offense of conviction; and then

4    it has an "and" provision.

5            The thing that's different about this case is the

6    obstruction charges relate with respect to the case against

7    his brother, so it's not obstruction of the instant offense

8    of conviction.

9            I am quite convinced that it doesn't apply, but I

10   also want to give my client a chance to think about this.

11           THE COURT:  You might be right on this, but...

12           Yes?

13           MR. SMOCK:  Your Honor, I think -- I'm almost

14   certain that it doesn't apply.

15           Having spoken to Mr. Harmon about it, he,

16   understandably, would like to have a chance to speak with me

17   without having Your Honor wait and listen to our discussion.

18           I have talked to the government.  I think, if the

19   Court is willing, we can come back in early January or

20   whenever the Court is available.

21           I am, hopefully, going to be out next week.  And

22   we can finalize the plea proceeding after I have talked to

23   Mr. Harmon about it and made him comfortable.

24           THE COURT:  Okay.  Well, I didn't mean to throw

25   this off, but I do think there are questions about all of this.

1              MR. SMOCK:  I do appreciate it.  Thank you.

2              THE COURT:  All right.  So the earliest we can do

3      it then is the 5th or 6th?

4              MR. BROWN:  The government is available afternoon

5      of the 5th or the 6th.  We'd just ask the Court for some

6      flexibility in terms of the pretrial deadlines.  We are all

7      hoping this goes through.

8              THE COURT:  Yes.  That trial date is coming up.

9              MR. BROWN:  Yes, Your Honor.

10             (Whereupon, the Court and staff confer.)

11             THE COURT:  Are you all -- are you available on

12     January 6, at 9:30?

13             MR. SMOCK:  I am.

14             MR. BROWN:  Yes, Your Honor.

15             THE COURT:  And what I propose to do on

16     January 6th -- if Mr. Harmon agrees to go forward with the

17     plea with the uncertainty that he always has had about what

18     the sentencing guidelines estimate is going to be -- I am

19     not going to repeat everything I have just said.  I am just

20     going to pick up here.  This should take a very short period

21     of time.

22             MR. SMOCK:  Thank you.

23             THE COURT:  Okay.  With that, you are all excused.

24             MS. PELKER:  Thank you, Your Honor.

25             THE COURT:  Have a good holiday.

1        (Whereupon, the proceeding concludes, 2:55 p.m.)

2                        * * * * *

3                    **CERTIFICATE**

4

5        I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

6   certify that the foregoing constitutes a true and accurate

7   transcript of my stenographic notes, and is a full, true,

8   and complete transcript of the proceedings to the best of my

9   ability.

10        This certificate shall be considered null and void

11   if the transcript is disassembled and/or photocopied in any

12   manner by any party without authorization of the signatory

13   below.

14

        Dated this 3rd day of January, 2023.

15

16   /s/ Elizabeth Saint-Loth, RPR, FCRR
     Official Court Reporter

17

18

19

20

21

22

23

24

25