

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

JAN - 6 2023

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Criminal No. 21-cr-433 (BAH) |
| GARY JAMES HARMON, | : |
| Defendant. | : |

## STATEMENT OF THE OFFENSE AND RELATED CONDUCT

### I. THE ELEMENTS OF THE OFFENSES

**Wire Fraud:** The essential elements of the offense of Wire Fraud, in violation of Title 18, United States Code, Section 1343, are:

(1) that the defendant knowingly and willingly devised or intended to devise a scheme to defraud;

(2) that the scheme to defraud employed materially false or fraudulent pretenses, representations, or promises;

(3) that the defendant transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing, sign, or signal in furtherance of executing such scheme; and

(4) that the defendant acted with a specific intent to defraud.

**Obstruction of an Official Proceeding:** The essential elements of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), are:

(1) that the defendant obstructed, influenced, or impeded any official proceeding; and

(2) that the defendant acted corruptly.

## II. FACTUAL BASIS

Had this case proceeded to trial, the government would have proven the following facts beyond a reasonable doubt:

1.  At all relevant times, the defendant GARY JAMES HARMON ("GARY HARMON") was a resident of the Northern District of Ohio.

2.  LARRY DEAN HARMON ("LARRY HARMON") was GARY HARMON's brother and a resident of the Northern District of Ohio.

3.  Bitcoin ("BTC") was a decentralized virtual currency. All bitcoin transactions were posted to a public ledger, called the blockchain. Although transactions were visible on the public ledger, each transaction was only listed by a series of letters and numbers that did not identify the individuals involved in the transaction.

4.  GARY HARMON was employed at a company owned and operated by LARRY HARMON in Akron, Ohio, until in or about February 2020. GARY HARMON began receiving state unemployment benefits beginning in or about April 13, 2020.

### Indictment of LARRY HARMON for Operating HELIX

5.  On December 3, 2019, a federal grand jury in the District of Columbia returned a sealed indictment (the "Indictment") against LARRY HARMON on counts of Conspiracy To Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a); and Money Transmission Without a License, in violation of D.C. Code § 26-1023(c).

6.  The Indictment contained a Forfeiture Allegation, which provided notice that the government would seek the forfeiture of "any property, real or personal, involved in the offense, and any property traceable thereto," referring to Counts One and Two of the Indictment, charging

Conspiracy To Launder Monetary Instruments and Operating an Unlicensed Money Transmitting Business.

7. The charges in the Indictment arose from LARRY HARMON's role as administrator of a darknet money transmitting and money laundering business named HELIX. HELIX enabled customers, for a fee, to send bitcoins to designated recipients in a manner which was designed to conceal and obfuscate the source or owner of the bitcoins. This type of service was commonly referred to as a bitcoin "mixer" or "tumbler." HELIX charged a fee of approximately 2.5 percent per transaction. HELIX was linked to and affiliated with a darknet search engine named GRAMS, which was also owned and operated by LARRY HARMON. LARRY HARMON operated GRAMS and HELIX from in or about 2014 through in or about 2017.

8. In total, HELIX exchanged at least approximately 354,468 bitcoins—the equivalent of approximately $311 million in U.S. dollars at the time of the transactions—on behalf of its customers, including customers in the District of Columbia. The largest volume of funds sent to HELIX came from darknet markets selling illegal goods and services, including AlphaBay, Agora Market, Nucleus, and Dream Market.

9. Through blockchain analysis, law enforcement identified 16 bitcoin wallets (hereinafter the "SUBJECT WALLETS," and numbered "SUBJECT WALLET 1" through "SUBJECT WALLET 16") which contained a total of approximately 4,877 BTC traced to HELIX. The SUBJECT WALLETS represented the proceeds and fees LARRY HARMON generated through the operation of HELIX.

10. Pursuant to the Forfeiture Allegation in the Indictment, the BTC held in the 16 SUBJECT WALLETS were subject to criminal forfeiture as property "involved in" LARRY HARMON's money laundering and unlicensed money transmitting business offenses.

### Arrest of LARRY HARMON and Recovery of TREZOR ONE Cryptocurrency Storage Device

11. On February 6, 2020, federal agents arrested LARRY HARMON in Akron, Ohio and executed search warrants issued in the Northern District of Ohio at three properties owned or leased by LARRY HARMON. On the same date, Belizean authorities, acting on a U.S. request for legal assistance, searched a condominium leased by LARRY HARMON in San Pedro, Belize. On February 10, 2020, federal agents executed a search warrant issued in the Northern District of California for an apartment leased by LARRY HARMON in California. The Indictment was unsealed following LARRY HARMON's arrest.

12. Several cryptocurrency storage devices were seized pursuant to the searches. The devices included a Trezor cryptocurrency storage device (hereinafter "TREZOR ONE"), which was magnetically attached underneath a table located a short distance from where LARRY HARMON was seated at the time of his arrest in Akron, Ohio.

13. Cryptocurrency wallets stored on a Trezor device, such as TREZOR ONE, can be accessed in at least two ways. First, if the user has physical access to the device, the user can plug the device into a computer and access a stored walled by entering a passcode on the device. Second, if the user is unable to physically access the device, the user can recreate wallets stored on the device by using a recovery seed phrase. A recovery seed phrase is a unique sequence of 12 to 24 words securely generated in the Trezor device when it is set up. If a user is later unable to access the device, the user can still access the cryptocurrency wallets stored on the device by entering the seed words in the correct sequence into another Trezor device or similar application,

4

which will recreate the data constituting the same cryptocurrency wallets stored on the original device.

14. TREZOR ONE had an additional security feature enabled, which allowed a user to create unlimited "hidden wallets" within a Trezor device. Each hidden wallet is protected by its own additional passphrase. Without the correct passphrase, such hidden wallets are not visible on the device and cannot be accessed.

15. Immediately following LARRY HARMON's arrest, law enforcement was unable to recover any cryptocurrency from TREZOR ONE. TREZOR ONE actually held the 16 SUBJECT WALLETS containing proceeds and fees LARRY HARMON generated through the operation of HELIX, but the SUBJECT WALLETS were concealed within hidden wallets and were not visible to law enforcement.

16. Federal agents transported TREZOR ONE to a secure evidence locker in Washington, D.C.

## GARY HARMON Attends LARRY HARMON Hearings

17. On February 11, 2020, LARRY HARMON appeared at a detention and identity hearing in the U.S. District Court for the Northern District of Ohio. GARY HARMON was present in the gallery of the courtroom. During the hearing, the government attorney indicated to the Court that law enforcement had seized Trezor cryptocurrency storage devices but was unable to access their contents. At the conclusion of the hearing, LARRY HARMON was detained pending trial.

18. On March 13, 2020, LARRY HARMON appeared at a detention appeal hearing in the U.S. District Court for the District of Columbia. GARY HARMON was present in the gallery of the courtroom, in Washington, D.C. During the hearing, the government attorney reiterated to the Court that the government still had not been able to secure the contents of the seized Trezor

devices. At the conclusion of the hearing, LARRY HARMON was ordered released pending trial, subject to conditions of release including restrictions on cryptocurrency transactions.

### GARY HARMON Schemes To Defraud the Government of HELIX Proceeds from the SUBJECT WALLETS

19. In or about April 2020, GARY HARMON knowingly and willingly devised and intended to devise a scheme to defraud, that is, GARY HARMON, knowing that the SUBJECT WALLETS contained proceeds and fees LARRY HARMON generated through the operation of HELIX, and had been lawfully seized pursuant to a search warrant and were subject to forfeiture in the prosecution and criminal forfeiture proceeding in *United States v. Larry Dean Harmon*, and knowing that he had no lawful claim to the contents of the SUBJECT WALLETS, engaged in a scheme specifically intended to fraudulently obtain the contents of the SUBJECT WALLETS through anonymous/pseudononymous transfers to other wallets GARY HARMON controlled, using the false and fraudulent pretense that he was lawfully authorized to do so.

20. In or about April 2020, GARY HARMON used LARRY HARMON's credentials to recreate eight of the SUBJECT WALLETS that law enforcement had previously identified as containing the proceeds and fees LARRY HARMON generated through the operation of HELIX, namely, SUBJECT WALLET 1 through SUBJECT WALLET 8.

21. Between on or about April 19, 2020 and on or about April 24, 2020, GARY HARMON transferred the contents of SUBJECT WALLET 1 through SUBJECT WALLET 8 into new, previously unknown bitcoin wallets. In conducting each transfer, GARY HARMON did cause to be transmitted by means of wire communication in interstate commerce writings, signs, and signals from the District of Ohio, where he was located at the time.

22. Those transactions were visible to the government on the public blockchain. The transactions are summarized in the following table:

| Transfer Timestamp | Originating Wallet | Destination Wallet | BTC Sent | Approximate U.S. dollar value as of the date of transfer |
|---|---|---|---|---|
| 4/21/20 20:41 | SUBJECT WALLET 1 365Ha89bm4ujCxJyGax8ygGYpkH9FfcYTc | NEW WALLET 1 bc1q8xljz94cckeusrsvj9hc23z48vpme5asyda9q | 109.1979479 | $748,005.94 |
| 4/21/20 16:26 | SUBJECT WALLET 2 34Yjw2Tb8fHM97LgB3enVcajixH6U9Qpxi | NEW WALLET 2 bc1qm2s3fawp9cykf7cml2an4895nm8vurmf8cz4fe | 99.99989744 | $684,999.30 |
| 4/21/20 16:26 | SUBJECT WALLET 3 33CP1cYEjFTCVjRDYEwIwZPzer688BE4BT | NEW WALLET 3 bc1quw0cj5sz7twgjr2k5hk3m5jfvsy30xl0qts479 | 229.9998355 | $1,575,498.87 |
| 4/21/20 13:03 | SUBJECT WALLET 4 3F7cdqtZMdriwBwwCB74WiKit3bkirihRb | NEW WALLET 4 bc1qt4asc4wj6khhsm3xs5us54jqvwlwxmd7f6wzax | 54.83112457 | $375,593.20 |
| 4/21/20 19:22 | SUBJECT WALLET 5 35fhvnAC37KS5WuCTxFXk7zfTJge75G1dD | NEW WALLET 5 bc1q7apq75zv6r7hvcqrpm56nke54le7uhf87ytsvh | 55.88845252 | $382,835.90 |
| 4/20/20 12:44 | SUBJECT WALLET 6 3HuevX13pPgnUrtqU3UaJx1AMBph5xH86w | NEW WALLET 6 bc1q485k94wyqttylekcge8hwuy2fa94mq5r7jk62y | 158.6830152 | $1,085,693.32 |
| 4/19/20 14:42 | SUBJECT WALLET 7 3PLUJ9YJ6p3RrhmvmMQVwyS38VxeRQ8INq | NEW WALLET 7 bc1q5lf2jwjfkajxtwtfxj0zqy3n5jrm20w5gsp4k2 | 2.999981 | $21,399.76 |
| 4/24/20 19:26 | SUBJECT WALLET 8 37NxUHKKbmoZsQDEw5yyJxktNLGdzjDV1J | NEW WALLET 8 bc1qee72uxqgj5yrywfmtcmmyfkk4zku67ep6krfe3 | 0.99990861 | $7,506.11 |
| | | TOTAL: | 712.6003 | $4,881,532.40 |

23. In total, GARY HARMON transferred approximately 712.6003 BTC, with an approximate value of $4,881,532.40 as of the dates of the individual transfers.

24. GARY HARMON did so, each time, under the false and fraudulent pretense that he was lawfully authorized to make such transfers, when in truth and in fact GARY HARMON

7

had no lawful claim to the contents of the SUBJECT WALLETS and knew that those funds had been lawfully seized by the government and were subject to a pending forfeiture proceeding.

25. On April 26, 2020, government attorneys filed a motion for an emergency status hearing in LARRY HARMON's criminal case, alerting the Court to the cryptocurrency transactions involving the SUBJECT WALLETS.

26. On April 28, 2020, following a hearing, the Court in LARRY HARMON's criminal case issued an Order requiring LARRY HARMON to provide the government with access to any and all cryptocurrency within LARRY HARMON's possession, including "by disclosing seed recovery keys, access to hidden wallets, and other keys needed to transfer cryptocurrency." The Court further required that such cryptocurrency be turned over to the custody of the U.S. Marshals Service during the pendency of the criminal proceeding.

27. On April 29, 2020, LARRY HARMON complied with the Court's order and, through his attorney, provided the government with recovery seed phrases and passphrases for his cryptocurrency wallets.

28. Further on April 29, 2020, federal agents used the credentials provided by LARRY HARMON to access hidden wallets within TREZOR ONE. Federal agents confirmed that TREZOR ONE contained all 16 SUBJECT WALLETS. Federal agents successfully recovered approximately 4,168.98163 BTC from SUBJECT WALLET 9 through SUBJECT WALLET 16 stored on TREZOR ONE; said BTC was then transferred to the U.S. Marshals Service. Federal agents were also able to view transaction history for TREZOR ONE and confirmed that SUBJECT WALLET 1 through SUBJECT WALLET 8 had been emptied out as a result of the transactions conducted by GARY HARMON between on or about April 19, 2020, and on or about April 24, 2020.

29.     Beginning in or about August 2020, GARY HARMON laundered bitcoins from the SUBJECT WALLETS through two online bitcoin mixer services. GARY HARMON subsequently used the laundered bitcoins to finance large purchases and other expenditures.

### GARY HARMON Corruptly Obstructs the Forfeiture Proceeding Related to the SUBJECT WALLETS Containing HELIX Proceeds

30.     As set forth above, at all relevant times in April 2020, based on his attendance of court hearings among other things, GARY HARMON was aware of the criminal prosecution and criminal forfeiture proceeding in *United States v. Larry Dean Harmon*, Criminal Number 19-CR-395, in the United States District Court for the District of Columbia, and in particular that the bitcoin contained in the SUBJECT WALLETS had been lawfully seized pursuant to a search warrant and were the subject of a forfeiture proceeding in federal court.

31.     Nonetheless, from on or about April 19, 2020 through on or about April 24, 2020, GARY HARMON through the above transfers did corruptly obstruct, influence, and impede, and did attempt to corruptly obstruct, influence, and impede, the official proceeding to which the bitcoin related, that is, the above-referenced criminal prosecution and criminal forfeiture proceeding in *United States v. Larry Dean Harmon*. Specifically, it was corrupt to remove and steal the bitcoin that was the subject of the forfeiture proceeding while the issue of its title, ownership, and control was before the Court in that matter; and to conceal his own role in the theft of the bitcoin.

### III. CONCLUSION

32.     At all relevant times, GARY HARMON was aware that the BTC stored on TREZOR ONE was subject to seizure and forfeiture in the criminal prosecution and criminal

9

forfeiture proceeding in *United States v. Larry Dean Harmon*, Criminal Number 19-CR-395, in the United States District Court for the District of Columbia.

33. GARY HARMON admits that some of the proceeds he personally obtained as a result of the offenses described above have been dissipated by him and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

34. GARY HARMON waives any challenge to venue in the District of Columbia.

35. The facts contained herein are not complete in all details. Instead, they are provided in order to demonstrate that the elements of the charged offense have been met for purposes of a plea in this case. These are not all of the facts known to the defendant and to the government.

                                              MATTHEW M. GRAVES
                                              UNITED STATES ATTORNEY
                                              D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        Computer Crime and Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov

## Defendant's Acceptance

I have read this Statement of the Offense and carefully reviewed every part of it with my attorneys. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 12-6-22

Gary James Harmon
Defendant

## Defense Counsel's Acknowledgment

I have reviewed every part of this Statement of the Offense with my client. It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

Date: 12/15/22

Edward Smock
John McNichols
Peter Jorgensen
Attorneys for Defendant